**In re Beverly COCHENER, Debtor.**

**David Barry, Appellant,**

**v.**

**Ronald L. Sommers, Trustee, Appellee.**

No. 01–34884–H4–7.
Civil Action No. H–07–0629.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 28, 2007.

Edmond Nwamdi O'Suji, Attorney at Law, Houston, TX, for Debtor.

## MEMORANDUM OPINION AND ORDER

SIM LAKE, District Judge.

Appellant, David Barry, appeals the Bankruptcy Court's February 9, 2007, Order granting the motion of Ronald L. Sommers, Trustee, for sanctions.[1] *See In re Cochener,* 360 B.R. 542 (Bankr.S.D.Tex. 2007). Pending before the court are the Appellant's Brief (Docket Entry No. 8), Brief for Appellee Ronald J. Sommers, Trustee (Docket Entry No. 17), Appellant's Reply Brief (Docket Entry No. 21), Motion of Ronald J. Sommers, Trustee, for Leave to File Surreply Brief (Docket Entry No. 22), and Appellee's Motion to Strike Certain of Appellant's Record (Docket Entry No. 23). For the reasons explained below the Bankruptcy Court's order granting the trustee's motion for sanctions will be reversed in part and affirmed in part, Appellee's motion to file surreply brief will be granted, and Appel-

---

1. Order: (1) Granting the Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate; (2) Denying David Barry's Motion to Dismiss the Trustee's Motion for Sanctions Against David Barry For Causing Unneces-sary Delay and Expense to the Estate; and (3) Regarding the Court's Show Cause Order of September 1, 2006 Against Beverly Cochener, Chad Cochener, and Jason Hawks, Docket Entry No. 145 in Bankruptcy Case No. 01–34884–H4–7.

lee's motion to strike will be declared moot.

## I. *Factual Background*

### A. Debtor's Petition and Hawks' Representation

On May 1, 2001, the debtor, Beverly Cochener, filed for relief under Chapter 7 of the Bankruptcy Code.[2] The debtor's attorney on May 1, 2001, was Jason Hawks.[3] Schedules filed together with the debtor's petition reflected total assets of $403, total liabilities of $111,000 owed to unsecured creditors, and no monthly income or expenses.[4] A footnote explained that the "[d]ebtor currently lives expense free with her son [Chad Cochener], who has been supporting her in his home since just prior to the date of [her] divorce [on November 3, 2000]."[5] *See In re Cochener,* 360 B.R. at 547–48.

On May 2, 2001, Sommers was appointed trustee for the debtor's bankruptcy estate.[6] The initial meeting of creditors was held on June 6, 2001. The only attendees were (1) the debtor, (2) Hawks, (3) the trustee, and (4) Pam Stewart, counsel for John Cochener, the debtor's former spouse. Based on information received from the attorney representing the debtor's former spouse the trustee asked the debtor for documents including her divorce decree, any trust agreements she had with her son, Chad Cochener, and ownership information for the house in which she lived. Following the debtor's and Hawks' agreement to produce the requested documents, the creditors' meeting was continued until June 20, 2001.[7] *See In re Cochener,* 360 B.R. at 549–50 ¶¶ 16–22.

### B. Barry's Representation and Debtor's Motion to Dismiss

Concerned that the debtor's former spouse would file an adversary action, Hawks—who was not board certified in bankruptcy law—brought the case to Barry in search of more experienced representation.[8] Since the debtor's former spouse was also her primary creditor, Barry concluded that bankruptcy would not achieve the debtor's objectives.[9] On June 18, 2001, Barry filed a motion to dismiss the debtor's petition on which he signed Hawks' name as "Attorney for Debtor" "with per-

2. Voluntary Petition, Docket Entry No. 1 in Bankruptcy Case No. 01–34884–H4–7 and Item 1 of Appellee's Amended Designation of Additional Items to be Included in the Record on Appeal (Appellee's Amended Record), Docket Entry No. 4.

3. *Id.*

4. Item 2 of Appellee's Amended Record, Docket Entry No. 4.

5. Schedule 1, Current Income of Individual Debtor(s), Exhibit 2 of Appellee's Amended Record, Docket Entry No. 4.

6. Notice of Appointment of Trustee, Ronald Sommers, Docket Entry No. 3 in Bankruptcy Case No. 01–34884–H4–7.

7. Testimony of Ronald Sommers, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 130 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 in Appellant's Designation of Record on Appeal (Appellant's Record), Docket Entry No. 160 in Bankruptcy Case No. 01–34884–H4–7, pp. 33–36; Transcript of Sanctions Hearing held September 27, 2006, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and Item 18 in Appellant's Record, pp. 124–26, 131–35.

8. Testimony of Jason Hawks, Transcript of Sanctions Hearing held September 27, 2006, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and Item 18 of Appellant's Record, pp. 55–56, 81–82.

9. Testimony of David Barry, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 137 in Bankruptcy Case No. 01–34884–H4–7 and Item 18 in Appellant's Record (Barry Testimony Only), pp. 11–12, 43–44.

mission," and he signed his own name as "Associate Counsel for Debtor."[10] Citing 11 U.S.C. § 305, the motion sought dismissal on grounds that "[n]o creditor in this case would suffer any legal prejudice by its dismissal"; and that "[t]he interests of the creditors and Debtor would be better served by the dismissal of this bankruptcy proceeding rather than its continuation and adjudication."[11] The day he filed the motion, Barry sent a copy of it to the trustee together with a letter stating that the debtor would not attend the continued creditors' meeting on June 20, 2001.[12] See In re Cochener, 360 B.R. at 550–52 ¶¶ 23–30. On July 24, 2001, Barry filed a motion seeking to substitute for Hawks as debtor's attorney of record,[13] In re Cochener, 360 B.R. at 552 ¶ 26, which the Bankruptcy Court granted on September 3, 2001.[14]

On August 6, 2001, the debtor's former spouse filed an adversary action against the debtor.[15]

On August 14, 2001, Barry wrote a letter to the trustee stating that neither he nor the debtor would appear at the continuation of the first creditors' meeting, which had been rescheduled for August 29, 2001, that a hearing on the debtor's motion to dismiss had been scheduled for September 4, 2001, and that "[i]n the unlikely event the case is not dismissed on September 4, 2001, if you wish to reconvene the § 341 meeting after that date, I will be glad to prepare, serve, and file the appropriate notice."[16] See In re Cochener, 360 B.R. at 553–54 ¶ 38.

On September 4, 2001, the Bankruptcy Court held a hearing on the debtor's motion to dismiss.[17] Barry's associate, Ira Joffe, explained that Hawks had filed the debtor's petition and that Barry substituted in because Hawks found himself "out of his depth."[18] Joffe explained that had the debtor come to Barry first, the bankruptcy would not have been filed because the debtor mistakenly believed that by filing bankruptcy she could obtain relief from a state court contempt proceeding arising from a messy divorce. Although the trustee's attorney agreed that the debtor's petition should not have been filed, she opposed the motion to dismiss because pleadings in the adversary action filed by the debtor's former spouse alleged that prior to filing her petition the debtor had transferred funds to family members that could possibly be made available to pay creditors.[19] Observing that such motions are rarely opposed, but that when they are opposed they deserve a full hearing, the

10. Debtor's Motion to Dismiss, Docket Entry No. 7 in Bankruptcy Case No. 01–34884–H4–7 and Item 1 of Appellant's Record.

11. Id.

12. Exhibit B attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 in Appellant's Record.

13. Docket Entry No. 12 in Bankruptcy Case No. 01–34884–H4–7.

14. Docket Entry No. 20 in Bankruptcy Case No. 01–34884–H4–7.

15. See Complaint, Docket Entry No. 1, filed in Adversary Proceeding No. 01–3306.

16. Exhibit C attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 in Appellant's Record.

17. See Transcript of Hearing held on September 4, 2001, Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record.

18. Id. at 2.

19. Id. at 4–5.

Bankruptcy Court continued the hearing so that the parties could conduct discovery.[20]

On October 17, 2001, the trustee noticed an examination of the debtor pursuant to 11 U.S.C. § 2004, which included a document production request.[21] Barry protested the document production request as overreaching because

[t]he Bankruptcy Code permits the Trustee to look back for up to one year with an eye toward fraudulent transfers or preferences to insiders. As you know, the Debtor was divorced in November 2000 and that court divided whatever property the Debtor may have owned prior to her divorce. Given the time limits permitted in the Bankruptcy Code and since the divorce decree will show transfers of property owned by the Debtor and her former spouse on the date of its entry, it would seem that only transfers made later are relevant here.[22]

Disagreeing with Barry, the trustee's attorney responded that

the Trustee[ ] can inquire about transactions for the past four years as he can avail himself of the fraudulent transfer statute under Texas law, as well as the one year statute provided by the Bankruptcy Code. I am not only concerned about transfers that the Debtor made to

her ex-husband, but also transfers she may have made to any insider, including her children. Her divorce in 2000 does not necessarily shield her transfers made prior to her divorce during the four year period. The Debtor's refusal to produce documents during this four year time period makes me ... suspect that she is hiding assets.[23]

*See In re Cochener*, 360 B.R. at 555–56 ¶¶ 44 and 46.

The 2004 examination was ultimately set for November 14, 2001. The debtor neither appeared nor produced documents, and Barry appeared only to state that he had lost contact with the debtor. *See In re Cochener*, 360 B.R. at 556 ¶¶ 47–49.

On November 20, 2001, the trustee filed an expedited motion to dismiss the debtor's motion to dismiss. *Id.* at ¶ 50 (citing Docket Entry No. 26 in Bankruptcy Case No. 01–34884–H4–7).[24] On November 29, 2001, Barry filed a Motion to Withdraw.[25] *Id.* at ¶ 51.

On December 7, 2001, the Bankruptcy Court held a hearing on the trustee's motion to dismiss the debtor's motion to dismiss.[26] Asserting that the debtor had refused to participate in the discovery process, the trustee asked the court to dismiss the debtor's motion to dismiss because the debtor's failure to participate

---

**20.** *Id.* at 8–10.

**21.** Docket Entry No. 24 in Bankruptcy Case No. 01–34884–H4–7.

**22.** Letter of October 17, 2001, Exhibit E attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 of Appellant's Record.

**23.** Letter of October 22, 2001, Exhibit F attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket En-

try No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 of Appellant's Record.

**24.** See Trustee, Ronald Sommers Expedited Motion to Dismiss Debtor's Motion to Dismiss Chapter 7 Proceeding, Docket Entry No. 26, in Bankruptcy Case N. 01–34884–H4–7, and Item 15 of Appellee's Amended Record.

**25.** Docket Entry No. 10 in Adversary Proceeding No. H–01–3306.

**26.** See Transcript of Hearing held on December 7, 2001, Docket Entry No. 181 in Bankruptcy Case No. 01–34884–H4–7 and Item 9 in Appellant's Record.

suggested that she had something to hide. Citing 11 U.S.C. § 109(g), Barry argued in response that the debtor's failure to cooperate with the trustee constituted additional evidence in favor of granting her motion to dismiss. Barry explained that

> the penalty for not showing up to prosecute your case properly is dismissal with prejudice for 480 days, which is basically, you know, what we've asked for in the Motion to Dismiss anyway.

> At this point, the major creditor in the case is her ex-husband. He already has a judgment against her from the State Court he was pursuing when she filed the bankruptcy. The other creditors, which are a few credit cards, have not made an appearance in the case.[27]

Explaining that the trustee did not know enough to dismiss the case, the court continued the hearing and told the trustee to "do whatever you need to do to … collect, or find the Debtor and obtain the information you need or want." [28]

On December 17, 2001, the trustee filed an opposition to Barry's motion to withdraw.[29] *Id.* at ¶ 52. The trustee argued, *inter alia,*

> [a]t the first meeting of creditors, it became apparent that Debtor may have concealed, hidden or failed to disclose transfer of assets to her son and other insiders. Barry's continued refusal to produce the documents and have Debtor appear at the first meeting of the creditor [sic] has caused the bankruptcy to incur costs and expenses. It is apparent that he had advised her not to appear or produce such documents which has now caused Debtor not to comply with the 2004 examination request.

> . . .

> Trustee requests that this Court deny Barry's motion to withdraw, or alternatively, if the Court allows withdrawal, require Barry to pay the Trustee's fees and costs incurred to date because of his refusal to produce the Debtor and documents at the reset creditors [sic] meetings.[30]

*Id.* On January 21, 2002, the Bankruptcy Court granted Barry's motion to withdraw.[31] Although the Bankruptcy Court denied the trustee's request for attorney's fees and costs because the request had not been made in a separate motion,[32] the bankruptcy judge wrote on the order granting Barry's motion to withdraw: "This order is without prejudice to any claims, ethical or otherwise, held by the Ch. 7 trustee." [33] *Id.* at 557 ¶¶ 53–54.

On May 6, 2002, the Bankruptcy Court held a hearing on the debtor's motion to

---

**27.** *Id.* at 1–2.

**28.** *Id.* at 2.

**29.** See Trustee's Objection to Motion of David W. Barry to Withdraw as Attorney of Record, Docket Entry No. 34 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 of Appellee's Amended Record.

**30.** *Id.* at 2–3 ¶¶ 9 and 11.

**31.** See Order Allowing David W. Barry to Withdraw as Attorney of Record, Docket Entry No. 37 in Bankruptcy Case No. 01–34884–H4–7, Docket Entry No. 12 in Adversary Pro-

ceeding No. H–01–3306 and Item 10 of Appellant's Record.

**32.** See Testimony of Mynde Eisen, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 130 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 in Appellant's Record, pp. 89–90.

**33.** See Order Allowing David W. Barry to Withdraw as Attorney of Record, Docket Entry No. 37 in Bankruptcy Case No. 01–34884–H4–7, Docket Entry No. 12 in Adversary Proceeding No. H–01–3306 and Item 10 of Appellant's Record.

dismiss. The debtor failed to attend the hearing, and the Court denied her motion to dismiss.[34] The debtor did not appeal the Bankruptcy Court's denial of her motion to dismiss. *See In re Cochener,* 360 B.R. at 558 ¶¶ 57–59.

## C. Trustee's Adversary Action Against the Debtor

On May 3, 2002, the trustee filed an adversary action to set aside fraudulent transfers under 11 U.S.C. § 544 and to recover avoidable transfers under 11 U.S.C. §§ 549 and 550, against Beverly Cochener, and against Chad Cochener, individually, as trustee of investment trusts for his sister Sarah and his son Hunter, and as next friend of Sarah and Hunter Cochener.[35] The trustee's complaint alleged that on or about March 30, 1999, American Title Company issued a check payable to John Cochener and Beverly Cochener in the amount of $95,668.44 for the sale of community property, that the debtor deposited the entire amount into a bank account at Fidelity Investments without John Cochener's consent, and then transferred most, if not all of the funds, to accounts held by Chad Cochener, either for himself, his son Hunter, or his sister Sarah, and that some, if not all of the proceeds were used to purchase the real property located at 18314 Westlock Street and 18326 Campbellford Road in Tomball, Texas.[36] The complaint also alleged that the debtor transferred approximately $50,000 to the Hunter Cochener Investment Trust, personal property valued at approximately $39,000 to Chad Cochener, and $91,407 from various investment funds to all the defendants.[37] The complaint alleged that these transfers were fraudulent and sought turnover of all the property.[38] *See In re Cochener,* 360 B.R. at 559–60 ¶¶ 61–64.

Neither the debtor nor any of her co-defendants answered the trustee's complaint. On December 20, 2002, the trustee moved for default judgment.[39] On February 11, 2003, the Bankruptcy Court entered a judgement finding that the defendants "although having been duly and legally cited to appear and answer, failed to appear and answer, and wholly made default," and also finding that "the transfers of real and personal property and monies ... by Beverly Cochener were fraudulent transfers and that such property is property of the ... bankruptcy estate." [40] *See In re Cochener,* 360 B.R. at 560 ¶¶ 65–68. The debtor did not timely appeal the default judgment but, instead, filed a number of post-judgment motions. The trustee's adversary action ended on June 30, 2005, when the debtor failed to appeal the District Court's decision affirming the Bankruptcy Court's denial of the debtor's post-judgment motions.[41] *See In re Cochener,* 360 B.R. at 560–62 ¶¶ 69–90.

---

**34.** See Order Denying Debtor's Motion to Dismiss, Docket Entry No. 41 in Bankruptcy Case No. 01–34884–H4–7 and Item 11 of Appellant's Record.

**35.** Trustee's Complaint, Docket Entry No. 39, Bankruptcy Case No. 01–34884–H4–7, and Docket Entry No. 1 in Adversary Proceeding H–02–3261.

**36.** *Id.* at 3 ¶¶ 11–15.

**37.** *Id.* at 4 ¶¶ 16–19.

**38.** *Id.* at 5–6 ¶¶ 20–29.

**39.** Docket Entry No. 8 in Adversary Action H–02–3261.

**40.** Docket Entry No. 9 in Adversary Action H–02–3261, pp. 1–2.

**41.** See Memorandum Opinion and Order, Docket Entry No. 26 in Civil Action No. H–04–4261.

### D. Trustee's Acquisition and Sale of Estate Property

In September of 2005 the debtor and her son released the real properties at 18314 Westlock and 18326 Campbellford Road to the trustee. Inspection showed the properties had been vandalized.[42] The trustee sold the Westlock property for more than its mortgage lien, but abandoned the Campbellford Road property as worth less than the amount of its mortgage lien.[43] *See In re Cochener*, 360 B.R. at 562–64 ¶¶ 91–100, 106, and 567–68 ¶¶ 124–26.

## II. *Trustee's Motion for Sanctions Against Barry*

On June 19, 2006, the trustee filed a motion for sanctions pursuant to Fed. R.Civ.P. 11 and 11 U.S.C. § 105 against Barry for causing unnecessary delay and expense to the debtor's bankruptcy estate arguing the motion to dismiss that Barry filed on the debtor's behalf in June of 2001 was frivolous, and that Barry's failure either to appear with the debtor or to produce documents at two continued creditors' meetings was improper.[44]

Beginning on August 31, 2006, the Bankruptcy Court conducted four days of hearings on the trustee's motion for sanctions.

After the first day of testimony the Bankruptcy Court continued the hearing and ordered the Debtor, her son Chad Cochener, and her first attorney, Jason Hawks, to appear in court and give testimony at the continuation of the hearing, ordered the Debtor to show cause why she should not be sanctioned for abuse of the bankruptcy process and/or defrauding the court, and ordered the Debtor and her son to show cause why one or both of them should not be sanctioned for destroying property of the bankruptcy estate.[45] The Bankruptcy Court reconvened the hearing on the trustee's motion for sanctions on September 27–28, 2006, and on October 20, 2006.

At the conclusion of the hearing the trustee withdrew his motion for sanctions under Rule 11 and its bankruptcy counterpart, Rule 9011, as legally unsupported, but continued to seek sanctions under the inherent authority granted to the Bankruptcy Court by 11 U.S.C. § 105.[46] On October 25, 2006, the Bankruptcy Court orally announced its findings of facts and conclusions of law in open court;[47] and on February 9, 2007, the Bankruptcy Court issued a written order granting the trustee's motion for sanctions.[48] *See id.* at

---

**42.** Testimony of Janet Webster, Transcript of Sanctions Hearing held September 27, 2006, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and Item 18 of Appellant's Record, pp. 152–62.

**43.** *Id.* at 163–64.

**44.** Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 of Appellant's Record, p. 5 ¶ 20.

**45.** See Order, Docket Entry No. 95 in Bankruptcy Case No. 01–34884–H4–7 and Item 21 of Appellee's Amended Record.

**46.** See Transcript of Motion Hearing Held on September 28, 2006, Docket Entry No. 132 in

Bankruptcy Case No. 01–43883–H4–7, and Item 19 of Appellant's Record, p. 98.

**47.** See Transcript of Motion Hearing Held on October 25, 2006, Docket Entry No. 111 in Bankruptcy Case No. 01–43883–H4–7, and Item 21 of Appellant's Record.

**48.** Order: (1) Granting the Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate; (2) Denying David Barry's Motion to Dismiss the Trustee's Motion for Sanctions Against David Barry For Causing Unnecessary Delay and Expense to the Estate; and (3) Regarding the Court's Show Cause Order of September 1, 2006 Against Beverly Cochener, Chad Cochener, and Jason Hawks, Docket Entry No. 145 in Bankruptcy Case No. 01–34884–H4–7.

564–65 ¶¶ 101–105, 107–114, and 568 ¶ 129. The court sanctioned Barry "in the amount of $25,121.89 for attorney's fees and costs incurred by the Trustee in defending against Barry's Motion to Dismiss this case [Docket Entry No. 7] and in prosecuting the Trustee's Motion for Sanctions." [49]

In a Memorandum Opinion the Bankruptcy Court held that Barry could not be sanctioned under Rule 9011 but could be sanctioned under 11 U.S.C. § 105 and 28 U.S.C. § 1927. *See id.* at 569–72. The Bankruptcy Court explained that

> under Bankruptcy Rule 9011, the Trustee had to have given Barry notice in 2001 to withdraw the Motion to Dismiss or else be subject to a motion for sanctions. Since the Trustee did not give Barry an opportunity to withdraw the Motion to Dismiss in 2001, this Court finds that Bankruptcy Rule 9011 is not presently an appropriate ground for sanctions.

*Id.* at 569–70. Citing 11 U.S.C. § 105 and the court's inherent powers, the Bankruptcy Court concluded that

> sanctions are appropriate against Barry because his actions constitute bad faith conduct, including the following: (1) Barry concocted a reason for the Debtor not to attend the continued Meeting of Creditors, and then instructed her not to attend this meeting; (2) Barry himself did not attend the continued Meeting of Creditors; (3) Barry filed a Motion to Dismiss the Debtor's case, which included blatantly false factual and legal contentions, for the purpose of delaying and hindering the Trustee's further examination of the Debtor at the continued Meeting of Creditors; (4) Barry drafted

a letter to the Trustee, dated October 17, 2001, grossly misstating the law regarding the allowable reach-back period for fraudulent transfers under the Bankruptcy Code in an attempt to mislead the Trustee and avoid having to produce documents; and (5) Barry instructed the Debtor not to produce the documents requested by the Trustee on June 6, 2001, which both prior counsel to the Debtor (i.e., Hawks) and the Debtor herself had already committed to produce.

*In re Cochener,* 360 B.R. at 574.

The Bankruptcy Court also concluded that it could "rely upon 28 U.S.C. § 1927 to sanction Barry's conduct in this case." *Id.* at 585. The court explained that

> [a]lthough the Trustee's Motion for Sanctions did not expressly include any reference to 28 U.S.C. § 1927, the very filing of the Motion for Sanctions put Barry on notice that this Court would be considering sanctions against him. [*See* Docket No. 78; Finding of Fact Nos. 101–105, 108.] Further, the very conduct that served as the basis of the Trustee's Motion for Sanctions against Barry is identical to the conduct the Court considers under 28 U.S.C. § 1927. Additionally, the Court held the multiday Sanctions Hearing during which Barry had ample opportunity to defend this conduct.

*Id.*

### III. *Standard of Review*

■ A district court has jurisdiction to hear an appeal from a bankruptcy court's final judgment or order. *See* 28 U.S.C. § 158(a). A bankruptcy court's decision to impose sanctions is discretionary; there-

---

**49.** *Id.* at 2. Despite the language in the Order that describes the amount of sanctions ordered as the amount of attorneys fees and costs expended by the Trustee, the accompanying Memorandum Opinion explains that

$2,500 of this amount represents disgorgement of the $2,500 retainer that Barry received from the debtor. *See In re Cochener,* 360 B.R. at 596.

fore, the exercise of that power is reviewed for abuse of discretion. *See Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 613 (5th Cir.1997). A bankruptcy court abuses its discretion when it "(1) applies an improper legal standard or follows improper procedures ..., or (2) rests its decision on findings of fact that are clearly erroneous." *In re Cahill*, 428 F.3d 536, 539 (5th Cir.2005). The "clearly erroneous" standard allows this court to reverse the Bankruptcy Court's findings of fact "only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *In re Dennis*, 330 F.3d 696, 701 (5th Cir.2003). "Mixed questions of fact and law, and questions concerning the application of law to the facts, are reviewed *de novo.*" *In re Bass*, 171 F.3d 1016, 1021 (5th Cir.1999). "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court." *Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 803 (5th Cir.) (en banc) *cert. denied sub nom. Minor v. Kmart Corp.*, 540 U.S. 1047, 124 S.Ct. 807, 157 L.Ed.2d 694 (2003).

## IV. *Analysis*

Barry argues that he is entitled to the affirmative defenses of laches and res judicata,[50] and that "[t]he Bankruptcy Court abused its discretion in making findings regarding privileged information and documents, in imposing sanctions against Barry [under 11 U.S.C. § 1105 and/or 28 U.S.C. § 1927], and in awarding excessive and unmitigated fees to the Trustee." [51]

**50.** Appellant's Brief, Docket Entry No. 8, pp. 8–12 ¶¶ 54–63.

**51.** *Id.* at 8.

**52.** *Id.* at 25.

### A. Laches

Asserting that the motion for sanctions was filed five years after the allegedly vexatious conduct at issue, Barry argues that the Bankruptcy Court's "most egregious error was in finding that the Motion for Sanctions ... was not barred by laches." [52] The trustee responds that the Bankruptcy Court did not err in concluding that his motion was not barred by laches because Barry received prompt notification of his sanctionable conduct, and because Barry has not been prejudiced by the delay.[53]

#### 1. *Applicable Law*

■ The doctrine of laches bars recovery when a claim holder sits on his rights for an unreasonable time to the prejudice of the opposing party. Whether to apply the doctrine of laches is committed to the court's discretion. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1032 (Fed.Cir.1992) (en banc). To prevail on his claim that the trustee's motion for sanctions was barred by laches, Barry had to have proved to the Bankruptcy Court by a preponderance of the evidence that (1) the trustee delayed filing his motion for sanctions, (2) the delay was for an unreasonable and inexcusable length of time, and (3) the delay caused undue prejudice to Barry. *Goodman v. Lee*, 78 F.3d 1007, 1014 (5th Cir.), *cert. denied sub nom. Lee v. Goodman*, 519 U.S. 861, 117 S.Ct. 166, 136 L.Ed.2d 108 (1996) (citing *Geyen v. Marsh*, 775 F.2d 1303, 1310 (5th Cir.1985)). *See also Aukerman*, 960 F.2d at 1032–33. In deciding whether laches applies a court looks at all of the facts and circumstances of each case

**53.** Brief for Appellee Ronald J. Sommers, Trustee (Appellee's Brief), Docket Entry No. 17, pp. 31–32.

and weighs the equities of the parties. *Aukerman,* 960 F.2d at 1032–33. "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Id.* at 1032. Material prejudice includes "economic prejudice" and "evidentiary prejudice." *Id.* at 1033. Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* "Economic prejudice may arise where a defendant ... will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id.* The "facts of unreasonable delay and prejudice ... must be proved and judged on the totality of the evidence presented." *Id.* at 1038.[54] Even where the defendant establishes the factors of laches through actual proof or by presumption, the court retains discretion whether to recognize the laches defense based on the equities of the case. *Id.* at 1036.

### 2. Application of the Law to the Facts

The trustee was aware of Barry's allegedly sanctionable conduct when it occurred and certainly no later than January 21, 2002, the day that the Bankruptcy Court granted Barry's motion to withdraw and denied the trustee's request for the costs and attorneys fees that he later sought to recover through the motion for sanctions filed in June of 2006.[55] Although Barry argued that the doctrine of laches barred the trustee's motion, the Bankruptcy Court concluded otherwise explaining in its introductory remarks:

> The attorney, David Barry (Barry), raises certain defenses, not the least of which is that his actions occurred in 2001, and to sanction him now after the passage of this much time is absurd and unfair. It is neither. Indeed, Barry has known since 2001 that the Chapter 7 Trustee was very unhappy with his conduct, and ever since the Trustee's initial expression to Barry of misgivings about his conduct, the Trustee has repeatedly told him that he needed to reimburse the Trustee for the unnecessary legal fees and expenses which the Trustee incurred due to Barry's conduct. Barry chose to turn a deaf ear to the patient pleas of the Trustee to arrive at a resolution. As a result of Barry's unwillingness to reimburse the Trustee, and because of other events that have occurred since 2001, the Trustee decided to file a Motion for Sanctions against Barry in 2006. Given that, in 2006, the Trustee was finally able to liquidate certain assets, the existence of which Barry did everything in 2001 to prevent the Trustee from uncovering, the Trustee's Motion for Sanctions is hardly absurd or untimely. Just the converse: it is reasonable and timely.

*In re Cochener,* 360 B.R. at 547. The Bankruptcy Court also noted that "this is not a case where evidence has become

---

**54.** *Aukerman,* 960 F.2d at 1020, was a patent case in which a rebuttable presumption of economic and material prejudice arises if the accused infringer establishes that the patentee delayed filing suit for over six years after receiving notice of the infringing activity. *Id.* at 1034–36. The patentee may rebut the presumption by coming forward with evidence that raises a genuine issue of fact as to either reasonableness or material prejudice. *Id.* at 1038.

**55.** See Order Allowing David W. Barry to Withdraw as Attorney of Record, Docket Entry No. 37 in Bankruptcy Case No. 01–34884–H4–7, Docket Entry No. 12 in Adversary Proceeding No. H–01–3306 and Item 10 of Appellant's Record.

stale. The letters and pleadings from 2001 are no less telling now than they were then." *Id.* at n. 2.

Barry argues that the trustee's delay of over four years—from January of 2002 when the Bankruptcy Court allowed him to withdraw to June of 2006 when the motion for sanctions was filed—is inexcusable. Assuming without deciding that the trustee's delay was inexcusable, the court is nevertheless not persuaded that the Bankruptcy Court erred by concluding that the equities weighed against applying the doctrine of laches in this case because Barry failed to present any evidence demonstrating that the trustee's inexcusable delay prejudiced his ability to mount a full and fair defense on the merits. Although Barry argues that "the record is replete with testimony of vital witnesses, including the Trustee and his employees, stating under oath that they were unable to remember vital facts and conversations that were so remote at the time," [56] Barry has neither identified any specific witnesses with lapsed memories, nor explained how the unreliability of any witness's memory of relevant events undermined his ability to mount a full and fair defense, or the Bankruptcy Court's ability to judge the facts. *See Aukerman,* 960 F.2d at 1033.

## B. Res Judicata

Asserting that the court held the debtor responsible for all costs in the adversary action filed by the trustee, Barry argues that the sanctions imposed against him are barred by the doctrine of res judicata because the trustee could and should have named him as a defendant in that adversary action.[57] The trustee responds that this argument is barred because it was not raised before the Bankruptcy Court, and because Barry could not have been named as a defendant in the adversary action brought against the debtor since the causes of action asserted therein had nothing to do with his conduct as debtor's counsel in the bankruptcy proceedings.[58]

The court does not need to address Barry's res judicata argument because Barry neither pleaded it in response to the trustee's motion for sanctions nor presented it to the Bankruptcy Court. *See American Furniture Co., Inc. v. International Accommodations Supply,* 721 F.2d 478, 482–83 (5th Cir.1981) (res judicata is an affirmative defense that must be raised in the defendant's response or else waived under Federal Rule of Civil Procedure 8(c)); *Matter of Gilchrist,* 891 F.2d 559, 561 (5th Cir.1990) ("It is well established that we do not consider arguments or claims not presented to the bankruptcy court."). Although there are circumstances in which an appellate court is justified in resolving an issue not passed on below, Barry has failed to argue, much less establish, that this is such a case. *See Singleton v. Wulff,* 428 U.S. 106, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) ("[i]t is the general rule ... that a federal appellate court does not consider an issue not passed upon below," but acknowledging the existence of exceptions when "the proper resolution is beyond any doubt," or "injustice might otherwise result"). Alternatively, the court concludes that Barry has failed to carry his burden of proof on this issue.

---

**56.** Appellant's Brief, Docket Entry No. 8, p. 10 ¶ 58. See also Appellant's Reply Brief, Docket Entry No. 21, p. 5.

**57.** Appellant's Brief, Docket Entry No. 8, pp. 11–12 ¶¶ 61–63, and p. 24 ¶ 87.

**58.** Appellee's Brief, Docket Entry No. 17, pp. 33–34. Although Barry filed a rely brief, he failed to address either of these arguments raised by the trustee therein. See Appellant's Reply Brief, Docket Entry No. 21.

Res judicata is a judicially-created doctrine applied by courts to prevent repeated litigation of the same claims and issues by the same parties. In addition to protecting litigants from the burden of multiple lawsuits, the doctrine fosters judicial economy and promotes the finality and certainty of judgments. *See Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (res judicata serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication"). The doctrine embraces two distinct preclusion concepts: claim preclusion (res judicata) and issue preclusion (collateral estoppel). *Id.* at 414. "Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* The burden is on the party seeking to invoke res judicata to prove that the doctrine bars the second action. *See Matter of Braniff Airways, Inc.,* 783 F.2d 1283, 1289 (5th Cir.1986).

■ Barry has asserted that the "Final Order in the Trustee's Adversary Proceeding was both *res judicata* and collateral estoppel as to the Trustee's fees and costs,"[59] but has failed to explain why either theory would bar the Bankruptcy Court from sanctioning him for bad faith conduct that occurred during his representation of the debtor in her main bankruptcy case, i.e., a separate proceeding from

the trustee's adversary action against the debtor. Moreover, despite having filed a reply brief, Barry has failed to explain why he would have been a proper party to the adversary action since he did not participate in the pre-petition transfers allegedly made by the debtor to her family members.[60] For these reasons Barry has failed to carry his burden of proof on his res judicata argument.

## C. Imposition of Sanctions Under 11 U.S.C. § 105

Barry argues that the Bankruptcy Court erred in sanctioning him pursuant to 11 U.S.C. § 105 because (1) the Trustee's motion did not identify a specific violation of the Bankruptcy Code for which sanctions were sought, (2) there is no evidence that he violated the Bankruptcy Code or engaged in bad faith conduct, and (3) the Bankruptcy Court improperly used 11 U.S.C. § 105 as a fee shifting statute.

### 1. *Applicable Law*

In relevant part, 11 U.S.C. § 105 states: [t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a). Section 105(a) provides bankruptcy courts broad authority to "take any action that is necessary or appropriate 'to prevent an abuse of process.'" *Marrama v. Citizens Bank of*

---

59. Appellant's Brief, Docket Entry No. 8, p. 12 ¶ 63.

60. See Appellee's Brief, Docket Entry No. 17, p. 33 (asserting that Barry would not have been a proper party to the adversary), and Appellant's Reply Brief, Docket Entry No. 21.

*Massachusetts,* —— U.S. ——, ——, 127 S.Ct. 1105, 1112, 166 L.Ed.2d 956 (2007). Courts have held that § 105 is broad enough to empower bankruptcy courts to sanction attorneys in conjunction with their inherent power "to implement the Bankruptcy Code and prevent abuses of bankruptcy process, powers inherent to district courts, as the Supreme Court recognized in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)." *In re Osborne,* 375 B.R. 216, 226 (Bankr.M.D.La.2007). *See also Matter of Volpert,* 110 F.3d 494, 500 (7th Cir.1997) ("We ... hold that, under 11 U.S.C. § 105(a), bankruptcy courts may punish an attorney who unreasonably and vexatiously multiplies the proceedings before them."); *In re Rainbow Magazine, Inc.,* 77 F.3d 278, 284 (9th Cir.1996) ("By providing that bankruptcy courts could issue orders necessary 'to prevent an abuse of process,' Congress impliedly recognized that bankruptcy courts have the inherent power to sanction that *Chambers* recognized exists within Article III courts."); *In re Courtesy Inns, Ltd., Inc.,* 40 F.3d 1084, 1089 (10th Cir.1994) ("We believe, and hold, that § 105 intended to imbue the bankruptcy courts with the inherent power recognized by the Supreme Court in *Chambers.*").

In *Chambers* the Supreme Court upheld the imposition of sanctions in the form of attorney's fees and associated costs pursuant to the court's inherent powers against a litigant who had repeatedly engaged in bad-faith conduct. The Court held that when sanctions under applicable rules and statutes are inadequate, a court may call upon its inherent powers to assess attorney's fees against a party who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." 111 S.Ct. at 2133 (quoting *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 1622–23, 44 L.Ed.2d 141 (1975)). The Court stated that

[i]n this regard, if a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party ... as it may when a party 'shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order.'

*Id.* (citations omitted). The Court explained that

the bad-faith exception resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper "is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

*Id.*

In *Matter of Case,* 937 F.2d 1014, 1023 (5th Cir.1991), the Fifth Circuit held that the principles recognized by the Supreme Court in *Chambers* are "equally applicable to the bankruptcy court." The Fifth Circuit has since explained that "[t]he threshold for the use of inherent power sanctions is high," *Crowe v. Smith,* 151 F.3d 217, 226 (5th Cir.1998), *cert. denied,* 526 U.S. 1158, 119 S.Ct. 2047, 144 L.Ed.2d 214 (1999) (*Crowe I*) (quoting *Elliott v. Tilton,* 64 F.3d 213, 217 (5th Cir.1995)), and that a court's inherent power to sanction "must be exercised with restraint and discretion," *id.,* must be accompanied by "a specific finding that the ... [sanctioned party] acted in 'bad faith,'" *id.* at 236 (citing *Chaves v. M/V Medina Star,* 47 F.3d 153, 156 (5th Cir.1995)), and "must comply with the mandates of due process, both in determining that the requisite bad faith exists and in assessing fees." *Gonzalez v. Trinity Marine Group, Inc.,* 117 F.3d 894, 898 (5th Cir.1997) (quoting *Chambers* 111 S.Ct. at 2136). *See also Marrama,* 127 S.Ct. at

1116–1117 (Alito, J., dissenting) ("[b]ankruptcy courts have used their statutory and equitable authority to craft various remedies for a range of bad faith conduct: [including] ... penalizing counsel; assessing costs and fees; or holding the debtor in contempt"). *See also Crowe v. Smith,* 261 F.3d 558, 563 (5th Cir.2001)(*Crowe II*).

Although the Fifth Circuit has explained that "[t]he threshold for the use of inherent power sanctions is high," *Crowe I,* 151 F.3d at 226, and has applied the clear and convincing evidence standard of proof to cases in which attorneys have been sanctioned with suspension and/or disbarment, *Crowe I,* 151 at 233,[61] it has not expressly decided which standard of proof courts are to apply when they consider imposing other types of inherent power sanctions. Other circuit courts of appeals have distinguished between sanctions that are fundamentally remedial and sanctions that are fundamentally punitive and held that the preponderance of the evidence standard applies to the former while the clear and convincing evidence standard applies to the latter. For example, in *Shepherd v. American Broadcasting Companies, Inc.,* 62 F.3d 1469, 1478 (D.C.Cir.1995), the court held that

> a district court may impose issue-related sanctions [in the form of adverse evidentiary determinations and the preclusion of evidence] whenever a preponderance of the evidence establishes that a party's misconduct has tainted the evidentiary resolution of the issue.
>
> ... However, for those inherent power sanctions that are fundamentally penal-dismissals and default judgments, as well as contempt orders, awards of attorney's fees, and the imposition of fines—the district court must find clear

and convincing evidence of the predicate misconduct.

In support of this holding, the *Shepherd* court reasoned that

> [t]he Supreme Court has recognized that awards of attorneys' fees for bad faith conduct serve the same punitive and compensatory purposes as fines imposed for civil contempt. *See Chambers,* 501 U.S. at 53–54, 111 S.Ct. at 2137. As a result, courts require clear and convincing evidence of misconduct before imposing attorneys' fees under their inherent power.

*Id.* at 1477.

■■■■ Citing *In re Silberkraus,* 253 B.R. 890, 913–14 (Bankr.C.D.Cal.2000), *aff'd* 336 F.3d 864 (9th Cir.2003), the Bankruptcy Court concluded that the trustee's motion for sanctions was governed by the preponderance of the evidence standard of proof because the trustee only sought sanctions in the form of attorney's fees and costs, not disbarment or suspension. *In re Cochener,* 360 B.R. at 572–74. Relying on *Shepherd,* 62 F.3d at 1469, the debtor in *In re Silberkraus* argued that any decision the court made to exercise its inherent power to sanction had to be based on clear and convincing evidence. 253 B.R. at 913. Rejecting the debtor's argument the court stated

> [a]lthough *Shepherd,* and one additional district court decision, *Samuel v. Michaud,* 980 F.Supp. 1381 (D.Idaho 1996)[, *aff'd* 129 F.3d 127 (9th Cir.1997)], enunciate the clear and convincing standard, the Court can find no wording in 11 U.S.C. § 105(a), or in controlling Ninth Circuit case law, suggesting that awarding sanctions under the court's inherent power must be based on clear and convincing evidence, rather than on

---

**61.** See also *Crowe II,* 261 F.3d at 563 (citing *Matter of Thalheim,* 853 F.2d 383, 389 n. 9 (5th Cir.1988) and *In re Medrano,* 956 F.2d 101, 102 (5th Cir.1992)).

the normal standard of proof in civil matters-proof by a preponderance of the evidence ... The law in the Ninth Circuit merely states that a court's authority to sanction under the court's inherent powers is limited to when the court makes an "explicit finding that. conduct 'constituted or was tantamount to bad faith.' " *Primus Automotive Fin. Serv., Inc. v. Batarse,* 115 F.3d 644, 648 (9th Cir.1997).

*Id.* at 913–14. Neither the Silberkraus court's nor the Bankruptcy Court's discussion in the instant case of which standard of proof courts are to apply when considering inherent power sanctions addressed the reasoning applied by the District of Columbia Circuit Court of Appeals in *Shepherd.* Nor did these discussions acknowledge that at least two additional circuit courts of appeals have similarly concluded that the appropriate standard of proof for imposing monetary sanctions in the form of attorney's fees pursuant to the court's inherent authority is the clear and convincing evidence standard. *See Autorama Corp. v. Stewart,* 802 F.2d 1284, 1287–88 (10th Cir.1986)("attorney's fees are awarded only when there is 'clear evidence' that challenged actions were taken entirely without color and are pursued for reasons of harassment or delay"); *accord Federal Trade Commission v. Freecom Communications, Inc.,* 401 F.3d 1192, 1201 (10th Cir.2005); and *Weinberger v. Kendrick,* 698 F.2d 61, 80 (2d Cir.1982), *cert. denied,* 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *accord Sauer v. Xerox Corp.,* 95 F.Supp.2d 125, 133 (W.D.N.Y. 2000), *aff'd* 5 Fed.Appx. 52 (2d Cir.2001). Since the Fifth Circuit approvingly cited *Shepherd* in *Crowe I,* 151 F.3d at 226, this court concludes that the Fifth Circuit would find *Shepherd's* reasoning more persuasive than the reasoning used by the *In*

*re Silberkraus* court, and that the Bankruptcy Court erred by applying the preponderance of the evidence standard to the trustee's motion. However, this conclusion does not end the court's analysis because the Bankruptcy Court stated that

> if this Court is incorrect in this conclusion, and the standard of proof is clear and convincing evidence, then this Court nevertheless concludes that the Trustee has shown, by clear and convincing evidence, that ... the conduct of Barry ... merits sanctions under this Court's inherent powers.

*Id.* at 574 & n. 22.

### 2. *Application of the Law to the Facts*

#### (a) Code Violation

■ Citing *Matter of Fesco Plastics Corp., Inc.,* 996 F.2d 152, 154 (7th Cir. 1993), Barry argues that the Bankruptcy Court erred by sanctioning him pursuant to 11 U.S.C. § 105 absent evidence that he had violated a specific provision of the Bankruptcy Code.[62] Barry's reliance on *Matter of Fesco* is misplaced because that case did not concern sanctions attorney for bad-faith conduct but, instead, an equitable exception to a specific section of the Bankruptcy Code. *Matter of Fesco* stands for the unexceptional principle that the powers conferred by § 105(a) may be exercised "only as a means to fulfill some specific Code provision [, and that] ... a court may not employ its equitable powers to achieve a result not contemplated by the Code." *Id. See also In re Cajun Electric Power Cooperative, Inc.,* 185 F.3d 446, 453 & n. 9 (5th Cir.1999)(citing *Fesco* for this principle). The relevant Seventh Circuit authority is *Matter of Volpert,* 110 F.3d at 500, which held that "under 11 U.S.C. § 105(a), bankruptcy courts may punish an attorney who unreasonably and vexatiously

---

62. Appellant's Brief, Docket Entry No. 8, pp. 13–14 ¶¶ 65–66.

multiplies the proceedings before them." *Accord Matter of Case,* 937 F.2d at 1023. Accordingly, the Bankruptcy Court did not need to find, that Barry had violated a specific provision of the Bankruptcy Code before imposing sanctions on him under 11 U.S.C. § 105.

### (b) Due Process Violation

Barry argues that because the Trustee's motion did not allege that he had violated a specific provision of the Bankruptcy Code, "the notice of sanctions was inadequate to afford [him] basic due process." [63] The trustee responds that Barry received notice sufficient to satisfy the requirements of due process. [64] The court agrees.

"The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (quoting *Grannis v. Ordean,* 234 U.S. 385, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914)). "Th[e] right to be heard has little reality or worth unless one is informed that the matter [affecting one's property rights] is pending and can choose for himself whether to appear or default, acquiesce or contest." *Id. See also City of West Covina v. Perkins,* 525 U.S. 234, 119 S.Ct. 678, 681, 142 L.Ed.2d 636 (1999) ("A primary purpose of the notice required by the Due Process Clause is to ensure that the opportunity for a hearing is meaningful."). The Supreme Court's decision in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), sets forth the criteria courts are to consider when asked to determine what process is due. One of these factors is "the risk of an erroneous deprivation of . . . [a liberty or property] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Id.* Barry has not explained how the trustee's failure to allege, or the Bankruptcy Court's failure to identify, a code violation increased the risk that he would be erroneously sanctioned. Since the court has already concluded that the Bankruptcy Court's power to sanction Barry was not limited to violations of specific sections of the Bankruptcy Code, the failure of the trustee or the Bankruptcy Court to identify such a section of the code did not detract from the adequate notice and hearing that Barry received.

The motion for sanctions notified Barry that the trustee sought sanctions against him pursuant to 11 U.S.C. § 105 for filing the debtor's motion to dismiss, failing to attend the continued creditors' meeting, advising the debtor not to attend or to produce documents at the continued creditors' meeting, and misstating the law of reach back in a letter to the trustee. [65] The Bankruptcy Court held a multi-day hearing at which Barry defended the conduct at issue, and also argued that sanctions should not be awarded under § 105 because the acts of which the trustee complained were not taken in bad faith. [66] Because the trustee's motion apprized Barry that he could be sanctioned and described the conduct that could be found sanctionable, because the Bankruptcy Court accorded Barry an opportunity to defend himself

---

63. Appellant's Brief, Docket Entry No. 8, p. 19 ¶ 75.

64. Appellee's Brief, Docket Entry No. 17, pp. 20–21.

65. Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No.

78, in Bankruptcy Case No. 01–34884–H4–7 and Item 12 of Appellant's Record.

66. See, e.g., Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 130 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 in Appellant's Record, pp. 7–24.

at the multi-day hearing, and because Barry has made no showing that the notice provided by the trustee's motion deprived him of a meaningful opportunity to be heard, the court concludes that Barry's due process argument fails. *See In re Nalls,* 124 Fed.Appx. 232, 234 (5th Cir. 2005). ("Although the O[rder to] S[how] C[ause] in this case did not specifically mention the possibility of a suspension, nor did it specify any particular Rule of Professional Conduct that was breached, it did give reasonable notice."). *See also In re Sunshine Jr. Stores, Inc.,* 456 F.3d 1291, 1306–07 (11th Cir.2006) (due process requires fair notice that one's conduct may warrant sanctions and must accord the opportunity to justify the allegedly sanctionable actions either orally or in writing).

### (c) Bad Faith Conduct

■ Before a court may impose sanctions under 11 U.S.C. § 105 or its inherent authority, it must find that the party being sanctioned acted in bad faith. *Crowe II,* 261 F.3d at 563 (citing *Chaves,* 47 F.3d at 156). *See also Hazeur v. Keller Industries,* 983 F.2d 1061, 1993 WL 14973, *7 (5th Cir.1993) (unpublished) (citing *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980)). "Bad faith, for purposes of § 105, is characterized as an attempt to abuse the judicial process." *In re Gorshtein,* 285 B.R. 118, 124 (Bankr.S.D.N.Y.2002). "[C]ourts have held that false representations during bankruptcy proceedings constitute bad faith and are, therefore, subject to sanctions." *Id. See also Crowe II,* 261 F.3d at 563 (court could rely on its inherent power to sanction attorneys for affirmative misrepresentation made during settlement conference). A finding that the sanctioned party acted in bad faith is a finding of fact reviewed under the clearly erroneous standard. *Crowe II,* 261 F.3d at 563 (citing *Chaves,* 47 F.3d at 156). *See*

*also Hazeur,* 983 F.2d 1061, 1993 WL 14973 at *7 (citing *United States v. Wallace,* 964 F.2d 1214, 1217 (D.C.Cir.1992)).

Under this standard of review, a ... court's finding may be set aside if it rests on an erroneous view of the law. *Pullman–Standard v. Swint,* 456 U.S. 273, 287[, 102 S.Ct. 1781, 72 L.Ed.2d 66] (1982). Once it is determined, however, that the ... court applied the correct legal standard in making a finding, that finding will not be set aside unless, based upon the entire record, we are "left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, [N.C.],* 470 U.S. 564, 573[, 105 S.Ct. 1504, 84 L.Ed.2d 518] (1985) (quoting *United States v. [U.S.] Gypsum Co.,* 333 U.S. 364, 395[, 68 S.Ct. 525, 92 L.Ed. 746] (1948)). "If the ... court's account of the evidence is plausible in light of the record viewed in its entirety," we will not set it aside as clearly erroneous—even if convinced that had we "been sitting as trier of fact, [we] would have weighed the evidence differently." *Anderson,* 470 U.S. at 573–74[, 105 S.Ct. 1504].

*Hazeur,* 983 F.2d 1061, 1993 WL 14973 at *7.

The Bankruptcy Court sanctioned Barry under § 105 after finding that he had committed five acts in bad faith: (1) filed a motion to dismiss based on blatantly false factual and legal contentions for the purpose of delaying and hindering the trustee's further examination of the debtor at the continued creditors' meeting, (2) instructed the debtor not to attend the continued creditors' meeting, (3) failed to attend the continued creditors' meeting on June 20, 2001, (4) misstated the law regarding the trustee's power of reach back in a letter to the trustee, and (5) instructed the debtor not to produce documents re-

quested by the trustee. *In re Cochener,* 360 B.R. at 574.[67] Barry argues that the Bankruptcy Court clearly erred in finding that he acted in bad faith. For the reasons explained below the court concludes that the Bankruptcy Court did not clearly err in finding that Barry acted in bad faith by advising the debtor not to participate in or produce documents for the continued creditors' meetings but did clearly err in all its other findings of bad faith conduct.

**(1) Motion to Dismiss**

 The Bankruptcy Court sanctioned Barry for filing the debtor's motion to dismiss upon finding that the motion contained blatantly false factual and legal contentions and that Barry filed it for the purpose of delaying and hindering the trustee's further examination of the debtor at the continued creditors' meeting. *In re Cochener,* 360 B.R. at 574, 581–83. Barry argues that these findings are clearly erroneous because he had a good faith basis for believing that his actions were legal.[68] In deciding whether to sanction Barry for having filed the motion to dismiss, the Bankruptcy Court was required to evaluate Barry's conduct at the time he filed the motion to dismiss. *See Thomas v. Capital Security Services, Inc.,* 836 F.2d 866, 874

(5th Cir.1988) (en banc) ("Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken—when the signature is placed on the document. Rule 11 was promulgated for a particular purpose—to check abuses in the signing of pleadings.").[69]

**(A) Bankruptcy Court's Denial of Motion**

On September 4, 2001, the Bankruptcy Court conducted a hearing on the motion to dismiss.[70] Barry's associate, Ira Joffe, explained that had the debtor come to Barry first, her petition would not have been filed because the filing was based on the debtor's mistaken belief she could obtain relief from a state court contempt proceeding related to a contentious divorce proceeding. The trustee's attorney agreed that the debtor's petition should not have been filed but opposed dismissal because the debtor's former spouse alleged that before filing her petition the debtor had transferred funds to family members that might be recoverable in fraudulent transfer actions.[71] The debtor's former spouse opposed the motion because he did not want to return to state court.[72] Stating that Chapter 7 filers have no absolute right to dismiss, the Bankruptcy Court

---

**67.** *See also In re Cochener,* 360 B.R. at 570–71 ("[T]his Court imposes sanctions against Barry for five different actions that he took. Of these actions, only the Motion to Dismiss, which included blatantly false factual and legal contentions, would have been subject to Bankruptcy Rule 9011. The remainder of the actions were not related to positions Barry took before this Court, but rather involved either advice to the Debtor or communications with the Trustee. It is clear that this mixed conduct is the exact situation to which *Chambers* referred as being 'intertwined' and appropriate for sanctioning solely under the umbrella of inherent powers.").

**68.** Appellant's Brief, Docket Entry No. 8, p. 14 ¶ 66.

**69.** Although the Bankruptcy Court sanctioned Barry under 11 U.S.C. § 105 and its inherent power, since the conduct alleged to be sanctionable was Barry's filing of the motion to dismiss, this principle of Rule 11 law is equally applicable in this context and required the Bankruptcy Court to evaluate Barry's conduct at the time he filed the motion to dismiss.

**70.** See Transcript of Hearing held on September 4, 2001, Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record.

**71.** *Id.* at 3–5.

**72.** *Id.* at 7.

continued the hearing so discovery could begin.[73] On May 6, 2002, the hearing was reconvened. Because Barry had withdrawn and the debtor failed to appear, the Bankruptcy Court denied the motion. *See In re Cochener*, 360 B.R. at 558 ¶¶ 57–59 (citing Order Denying Motion to Dismiss, Docket Entry No. 41 in Bankruptcy Case No. 34884–H4–7).

### (B) Bankruptcy Court's Finding of Bad Faith

On June 19, 2006, the trustee filed his motion for sanctions. The trustee alleged that Barry filed the motion to dismiss because he had discovered assets that the debtor was attempting to conceal.[74] Asserting that "Barry used the Motion to unreasonably delay the collection of assets and properties that Debtor had concealed, ... [that t]he delay resulted in additional expenses to the Bankruptcy Estate and a diminution of assets to the Bankruptcy Estate's creditors,"[75] and that "Barry knew or should have known that the Motion to Dismiss was without merit,"[76] the Trustee sought sanctions under 11 U.S.C. § 105 and Rule 11.[77] Barry responded that his analysis showed the case to have been essentially a two-party dispute best resolved in state court because the debtor's main creditor was her former spouse. Rejecting Barry's argument as an improper attempt to downplay the existence of creditors other than the debtor's former spouse, the Bankruptcy Court found that

Barry made blatantly false factual and legal contentions in the Motion to Dismiss that were misleading to creditors. Barry falsely claimed that: (1) "No creditor in this case would suffer any legal prejudice by its dismissal;" and (2) "The interests of the creditors and the Debtor would be better served by the dismissal of this bankruptcy proceeding rather than its continuation and adjudication." [Docket No. 7, ¶¶ 3, 4.]

*In re Cochener*, 360 B.R. at 581. The Bankruptcy Court reasoned that

[w]ith respect to the creditors, nothing could have been further from the truth at the time Barry made these assertions, and he was clearly aware of their falsity. Barry knew that the Debtor had transferred property, that the Trustee was investigating such transfers, and that the Trustee was seeking documents relating to the transfers of property. [Finding of Fact No. 24.]

*Id.*

Although willful misrepresentation of the facts and/or the law in a submission to the court constitutes bad faith, *see Chambers*, 111 S.Ct. at 2131, and *In re Gorshtein*, 285 B.R. at 124, the Bankruptcy Court failed to cite any law or evidence from which it could plausibly have found that the two statements it characterized as "blatantly false" misstated the law or the facts, or represented anything other than a good faith attempt to dismiss a case that even the trustee's attorney agreed should not have been filed.[78]

---

73. *Id.* at 8–10.

74. Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78, in Bankruptcy Case No. 01–34884–H4–7 and Item 12 of Appellant's Record.

75. *Id.* at 7 ¶ 24.

76. *Id.* at 8 ¶ 26.

77. *Id.* at 8.

78. See Transcript of Hearing held on September 4, 2001, Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record, p. 5 (trustee's attorney stated, "I think this case, unfortunately, I think what's happened is that it shouldn't have been filed.").

(i) False Factual and Legal Contentions Regarding the Interests of the Creditors and Debtor[79]

A debtor has no absolute right to dismiss a voluntarily filed Chapter 7 petition. *See In re Bartee*, 317 B.R. 362, 366 (9th Cir. BAP 2004); *In re Turpen*, 244 B.R. 431, 434 (8th Cir. BAP 2000). Barry's motion sought dismissal of the debtor's voluntary Chapter 7 under 11 U.S.C. § 305, an abstention statute that permits a bankruptcy court to dismiss or suspend proceedings in extraordinary circumstances.[80] *See In re Eastman*, 188 B.R. 621, 624–25 (9th Cir. BAP 1995); *In re Pennino*, 299 B.R. 536, 538 (8th Cir. BAP2003). In relevant part this statute provides

> [t]he court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if—
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension;

11 U.S.C. § 305(a)(1). Courts that have construed 11 U.S.C. § 305 are in general agreement that dismissal is appropriate only when "the court finds that both 'creditors and the debtor' would be 'better served' by a dismissal." *In re Eastman*, 188 B.R. at 624. *See also In re RAI Marketing Services, Inc.*, 20 B.R. 943, 945–46 (Bankr.D.Kan.1982); *In re Tarletz*, 27 B.R. 787, 793 (Bankr.D.Colo.1983). Although a motion to dismiss under § 305 must be considered in light of the unique facts of each case, courts have identified factors useful for determining when dis-

missal is appropriate. *See In re Pennino*, 299 B.R. at 538–39. These factors include:

> (1) whether the case is a two-party dispute; (2) the economy and efficiency of administration; (3) the availability of another case or forum to protect the interests of the parties; (4) alternative means of achieving equitable distribution of assets, and (5) the purpose for which bankruptcy jurisdiction has been sought.

*Id.* at 539 (citing *In re Iowa Trust*, 135 B.R. 615, 621–22 (Bankr.N.D.Iowa 1992)). Both the statutory language and case law establish that the test under § 305 is not whether dismissal would benefit the debtor or prejudice creditors but, instead, whether dismissal would "better serve" both the debtor and the creditors. *Id. See also In re Eastman*, 188 B.R. at 624.

Essentially, the same standard would also have applied under 11 U.S.C. 707(a), the statute more commonly cited in support of motions like that filed by Barry and the statutory basis underlying the case that Joffe cited to the Bankruptcy Court in support of Barry's motion.[81] Section 707(a) allows dismissal

> only after notice and a hearing and only for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> (2) nonpayment of any fees or charges required under chapter 123 of title 28; and
>
> (3) failure of the debtor in a voluntary case to file, within fifteen days or such additional time as the court may allow after the filing of the petition commenc-

---

**79.** The court has reversed the order of these factors from that contained in the Bankruptcy Court's opinion. *In re Cochener*, 360 B.R. at 581.

**80.** Debtor's Motion to Dismiss, Docket Entry No. 7 in Bankruptcy Case No. 01–34884–H4–7 and Item 1 of Appellant's Record.

**81.** See Appellant's Brief, Docket Entry No. 8, pp. 16–17 ¶ 71 explaining that Barry had provided Judge Greendyke a case which seemed to strongly support his position: *In re Geller*, 74 B.R. 685 (Bankr.E.D.Pa.1987), a case that construed 11 U.S.C. § 707(a).

ing such case, the information required by paragraph (1) of section 521, but only on a motion by the United States trustee.

11 U.S.C. § 707(a). Although this section does not expressly refer to motions filed by debtors seeking to dismiss a voluntarily filed petition, courts have interpreted it to apply to such motions. *See In re Turpen,* 244 B.R. at 434. What constitutes "cause" within the meaning of § 7 07(a) in this situation has been the source of scholarly and judicial debate. *See* Laura A. Pawloski, The Debtor Trap: The Ironies of Section 707(a), 7 Bankr.Dev. J. 175 (1990) (discussing how courts have developed different tests to determine when to grant dismissal under § 707(a)). One line of cases holds that dismissal should be freely granted absent a showing of plain legal prejudice, i.e., prejudice that is significant and real, not potential, when viewed in terms of the rights that debtors and creditors have after dismissal. *See In re International Airport Inn Partnership,* 517 F.2d 510, 511–12 (9th Cir.1975) (per curiam); *In re Hall,* 15 B.R. 913, 916–17 (9th Cir. BAP 1981); *In re Geller,* 74 B.R. 685, 689 (Bankr.E.D.Pa.1987) ("generally, a debtor wishing dismissal of a case should obtain this result in all but extraordinary situations"). Another line of cases holds that courts should weigh the benefits and prejudices of dismissal, and grant the motion only if dismissal would be in the best interests of both the debtor and the creditors. *See In re Blue,* 4 B.R. 580, 584 (Bankr.D.Md.1980) ("The court must deny the petitioner's requests [for dismissal] if the court feels that a dismissal of the bankruptcy would not be in the best interests of either the bankrupt or his creditors."). Yet another line of cases holds that voluntary dismissal should be denied if dismissal would prejudice creditors. *See In re Turpen,* 244 B.R. at 434 ("Even if the debtor can show cause, the court should deny the motion if there is any showing of prejudice to creditors."). The Fifth Circuit follows the middle approach that requires courts to determine if dismissal would be in the best interest of both the debtor and the creditors. *See Matter of Atlas Supply Corp.,* 857 F.2d 1061, 1063 (5th Cir.1988) (quoting *In re Blue,* 4 B.R. at 584, in support of its conclusion that courts "must balance the equities and weigh the 'benefits and prejudices' of a dismissal").

Whether the debtor had sought dismissal under 11 U.S.C. § 305 or § 707(a), the governing law required the Bankruptcy Court to balance the equities and weigh the benefits and prejudices to determine if dismissal would be in the best interest of both the debtor and the creditors. *See In re Williams,* 305 B.R. 618, 620 (Bankr. D.Conn.2004) ("Under Bankruptcy Code Section 707(a) (permitting dismissal 'only for cause') or Bankruptcy Code Section 305(a)(1) (permitting dismissal of a case if 'the interests of creditors and the debtor would be better served by such dismissal ...'), the task of the Court is to measure the prejudice to the Debtor triggered from a denial of the Motion against the prejudice to creditors if the case is dismissed"). Yet, without reference to any controlling law or any evidence that Barry had discovered assets that the debtor was attempting to conceal, the Bankruptcy Court concluded that Barry had filed the motion to dismiss in bad faith because his statements that

(1) "No creditor in this case would suffer any legal prejudice by its dismissal"; and (2) "The interests of the creditors and the Debtor would be better served by the dismissal of this bankruptcy proceeding rather than its continuation and adjudication"

were "blatantly false." *In re Cochener,* 360 B.R. at 581.

The only evidence that the Bankruptcy Court cited in support of its finding that Barry knowingly made false statements in the motion to dismiss are the debtor's schedules, which showed liabilities of $111,000, assets of $403, and no income. The Bankruptcy Court found the schedules to be inaccurate but did not find Barry responsible for filing them and did not find that Barry knew they were inaccurate. *See In re Cochener,* 360 B.R. at 549 (Finding of Fact No. 15: "The Debtor's Statement of Financial Affairs and Schedules, as initially filed and as amended, were inaccurate."). Asserting that "if [Barry] believed these Schedules, he could not possibly have believed that it was in the best interests of creditors for the case to be dismissed," the Bankruptcy Court concluded that "it was undeniably in the best interests of the creditors for the Trustee to retrieve and sell the Real Properties." *Id.* at 581. Missing from the court's analysis, however, is any evidence that when Barry filed the motion to dismiss he knew or should have known that the debtor held an interest in the real properties that would make them subject to turnover. Also missing from the Bankruptcy Court's analysis is any explanation of why, if Barry believed the schedules, he should not have concluded that this was a no-asset case in which the creditors' interests would be better served by return to their pre-petition status from which they could pursue judgments against the debtor in state court. *See Thomas,* 836 F.2d at 874–75.

Had the Bankruptcy Court based its analysis of Barry's assertions on the governing law, the court would have recognized that Barry's assertion that the interests of creditors and the debtor would be better served by dismissal was not a false statement but, instead, an accurate statement of the showing that needed to be made before the relief sought in the motion could be granted. This court, after considering the evidence and the governing factors that courts use to guide their determination of when to grant a motion to dismiss, concludes that the Bankruptcy Court could not plausibly have found that Barry's statements were "blatantly false" or that Barry filed the motion in bad faith.

### (a) Reason for Filing Petition

Barry assessed the case as having been filed due to the debtor's mistaken belief that the Bankruptcy Court could grant relief from orders arising from her divorce proceeding. Barry explained that after reviewing the debtor's divorce decree and the associated inventory of property, he concluded that the Bankruptcy Court could not grant the debtor relief from the state court orders.[82] Barry argues that he then reasonably concluded that the debtor should not have filed her petition.[83] Since bankruptcy filings are intended to provide debtors a fresh start and are not intended to provide debtors or creditors an alternative forum for on-going state court proceedings, *see In re Heritage Wood 'N Lakes Estates, Inc.,* 73 B.R. 511, 514 (Bankr.M.D.Fla.1987), and since marital debts are generally not subject to discharge, *see* 11 U.S.C. § 523(a)(15),[84] the

---

**82.** See Transcript of Hearing held on September 4, 2001, Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record, pp. 3–4. See also Testimony of David Barry, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 137 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 (Barry Testimony Only) in Appellant's Record, pp. 11–12, 43–44.

**83.** Appellant's Brief, Docket Entry No. 8, pp. 16–17, ¶ 71; Appellant's Reply Brief, Docket Entry No. 21, pp. 3, 10, 13–14.

**84.** In May of 2002 the Bankruptcy Court entered a judgment in the adversary action filed

Bankruptcy Court could not plausibly have found that Barry unreasonably concluded that the debtor's petition should not have been filed. *See In re McDaniel*, 363 B.R. 239, 243–46 (M.D.Fla.2007)(mistake in filing petition provided cause for voluntary dismissal despite some prejudice to primary creditor). Moreover, Barry's conclusion that the debtor's petition should not have been filed was corroborated by the trustee's attorney who also stated that the debtor's petition should not have been filed.[85]

### (b) Two–Party Dispute

Barry assessed the case as primarily a two-party dispute between the debtor and her former spouse arising from their divorce proceedings.[86] The Bankruptcy Court found "that Barry's use of the two-party argument to justify his filing of [the] Motion to Dismiss ... constitutes bad faith conduct on Barry's part." *In re Cochener*, 360 B.R. at 583. In further reliance on the debtor's schedules the Bankruptcy Court explained that

> [t]he very Schedules, both initial and amended, completed and filed by the Debtor-and Barry had access to these Schedules prior to filing the Motion to Dismiss-showed that there were 10 creditors who held aggregate debt in the amount approximately $111,000.00, none of which claims the Debtor disputed.

[Findings of Fact Nos. 4, 8, 13.] Moreover, both the initial Schedules and the amended Schedules reflect that the Debtor's ex-husband held $48,036.11, or 43%, of the aggregate debt, and that the other nine creditors held $62,963.89, or 57%, of the aggregate debt. [Docket Nos. 1, 5.] These dollar amounts and percentages underscore that the Debtor had several claimants other than her ex-husband and that the Chapter 7 was hardly a mere two-party dispute. Barry's contention that this Chapter 7 case was nothing more than a two-party dispute is further evidence of his willingness to disregard the truth in order to justify his tactics.

*Id.* at 582–83.

Use of bankruptcy to collaterally attack an underlying state court judgment such as that arising from the debtor's divorce case provides the context in which bankruptcy cases are often dismissed as nothing more than a "two-party dispute." *See In re Dilling*, 322 B.R. 353, 362 (Bankr. N.D.Ill.2005) (recognizing this situation). The presence of more than one creditor on a debtor's schedules does not preclude a court from finding that a case is essentially a two-party dispute. *See In re SB Properties, Inc.*, 185 B.R. 206, 208–09 (Bankr. E.D.Pa.1995) (dismissing Chapter 11 case sua sponte upon concluding that it was "essentially a two party dispute ... com-

---

by the debtor's former spouse decreeing "all unpaid balances due and owing Plaintiff, JOHN COCHENER, by BEVERLY COCHENER pursuant to the divorce decree entered on November 3, 2000 ... plus interest accrued ... nondischargeable pursuant to 11 U.S.C. § 523(a)(15)." See Docket Entry No. 20 in Adversary Case No. 01–3306.

**85.** See Transcript of Hearing held on September 4, 2001, Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record, p. 5 (attorney for the trustee stated, "I think this case, unfortunate-

ly, I think what's happened is that it shouldn't have been filed.").

**86.** Appellant's Brief, Docket Entry No. 8, pp. 23–24. See also Transcript of Hearing held on September 4, 2001, Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record, pp. 3–4. See also Testimony of David Barry, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 137 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 (Barry Testimony Only) in Appellant's Record, pp. 11–12, 43–44.

menced for the sole purpose of relocating pending litigation" from state court even though more than one creditor was named on the debtor's schedules).

Uncontroverted evidence establishes that Barry's investigation indicated the debtor had filed her petition in an effort to gain relief from orders arising from her state court divorce proceedings, and that the debtor's former spouse was not only the largest single creditor named on her schedules, but also the only creditor represented at the initial creditors' meeting and a creditor who held non-dischargeable debt.[87] In light of this evidence the Bankruptcy Court could not plausibly have found that Barry's characterization of the debtor's case as primarily a two-party dispute lacked any legal or factual support. Moreover, had the Bankruptcy Court at least referenced the governing law, it would have recognized that characterization of a case as primarily a two-party dispute serves as one of the criteria that courts use to help determine when a motion to dismiss should be granted, and that the presence of more than one creditor on the debtor's schedules does not preclude dismissing a voluntarily filed case. *See In re Pennino*, 299 B.R. at 539 (identifying "whether the case is a two-party dispute" as one of several criteria courts use for assessing motions based on 11 U.S.C. § 305), and *In re SB Properties, Inc.*, 185 B.R. at 209 (more than one creditor did not preclude finding that case was primarily a two-party dispute).

### (c) Alternative Forum

Dismissal of the debtor's petition would have allowed all the creditors to pursue their claims in state court. Since the debtor and her former spouse were already litigating in state court, and since Texas recognizes a cause of action for fraudulent transfer, the Bankruptcy Court could not plausibly have found that another forum was unavailable to protect the interests of the parties in the event of dismissal.

### (d) Equitable Distribution of Assets

The debtor's schedules showed $111,000 of liabilities, $403 of assets, and no income. Although the Bankruptcy Court found the debtor's schedules to be inaccurate, it did not cite any evidence showing that Barry knew or should have known that the schedules were inaccurate. Moreover, for purposes of its finding that the motion to dismiss contained false contentions, the Bankruptcy Court assumed that Barry believed the debtor's schedules. *See In re Cochener*, 360 B.R. at 581. Assuming that Barry believed the debtor's schedules, the Bankruptcy Court could not plausibly have expected Barry to conclude that there were any assets for the trustee to marshal and distribute but, instead, that this was a no-asset case. In a no-asset case the Bankruptcy Court could not plausibly have concluded that dismissal would not better serve the interests of creditors than non-dismissal because dismissal would have allowed each creditor to pursue claims against the debtor in state court while non-dismissal would likely result in discharge that would extinguish their claims. Although in a no-asset case dismissal generally offers all creditors an equal opportunity to pursue their claims in state court while non-dismissal favors creditors like the debtor's former spouse who hold non-dischargeable debt, the Bankruptcy Court rejected Barry's assertion that dismissal would benefit creditors without attempting to balance the equities or weigh the benefits and prejudices of dismissal. *See Matter of Atlas Supply Corp.*, 857 F.2d at 1063 (requiring bankruptcy court to balance the

---

87. See Appellant's Brief, Pocket Entry No. 8, pp. 23–24.

equities and weigh the benefits and prejudices of dismissal).

#### (e) Economy and Efficiency of Administration

Barry filed the motion to dismiss on June 18, 2001, less than two months after the debtor filed her petition on May 1, 2001, and over a month before the debtor's former spouse filed his adversary complaint on August 6, 2001. Although the initial creditors' meeting took place on June 6, 2001, soon thereafter Barry evaluated the case as one that should not have been filed at least in part because the debt held by the primary creditor, the debtor's former spouse, was non-dischargeable. Promptly thereafter Barry filed the debtor's motion to dismiss while the case was in its initial stages and well before any party had invested a significant amount of time or resources. Under these circumstances, the Bankruptcy Court could not plausibly have found that the interests of economy and efficiency of administration weighed against dismissal.[88] *See In re Schwartz*, 58 B.R. 923 (Bankr.S.D.N.Y. 1986) (judicial economy in dismissing case after determination that debts were non-dischargeable outweighed creditors' contentions that debtor had engaged in fraudulent transfers and dismissal would delay the assertion of their rights).

#### (ii) False Factual and Legal Contentions Regarding Legal Prejudice to Creditors [89]

Evidence that dismissal would cause legal prejudice to creditors can be used to overcome a debtor's assertion that dismissal would benefit both the debtor and the creditors. Barry's motion asserted that dismissal would not cause legal prejudice to the creditors, but the Bankruptcy Court identified this assertion as one of the "blatantly false" contentions made in the motion. In determining whether a creditor would suffer legal prejudice by a dismissal courts consider (1) the creditor's effort and expense for trial preparation; (2) excessive delay or lack of diligence on the debtor's part in prosecuting the action; (3) the adequacy of the debtor's explanation of the need for dismissal; and (4) the stage of the litigation at the time the motion to dismiss is made, specifically whether a motion for summary judgment is pending. *See In re Vitamins Antitrust Litigation*, 198 F.R.D. 296, 305 (D.D.C.2000) (citing *F.D.I.C. v. Knostman*, 966 F.2d 1133, 1142 (7th Cir. 1992)). Moreover, under Fifth Circuit precedent "plain legal prejudice" has been found in cases in which dismissal of the action stripped the defendant of a viable affirmative defense. *See Elbaor v. Tripath Imaging, Inc.*, 279 F.3d 314, 317–19 (5th Cir.2002)(plain legal prejudice often occurs where the grant of a motion for voluntary dismissal causes the non-movant to be stripped of an otherwise available defense).

The trustee opposed the debtor's motion to dismiss on grounds that dismissal would deprive creditors of the benefit of his powers to avoid pre-petition transfers to insiders. However, when Barry filed the motion to dismiss, the existence of fraudulent transfers had only been alleged—not proved,—and neither the Bankruptcy Court nor the trustee cited any evidence

---

**88.** Although the debtor's petition was filed in May of 2001, when the Trustee testified on September 27, 2006, he stated that no distribution had yet been made to creditors. See Transcript of Sanctions Hearing held September 27, 2006, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and Item 18 in Appellant's Record, p. 145.

**89.** The court has reversed the consideration of these factors from that contained in the Bankruptcy Court's opinion. *See In re Cochener*, 360 B.R. at 581.

showing that when Barry *filed* the motion he knew or should have known that the allegations of fraudulent transfers asserted by the debtor's former spouse were true.[90] Moreover, the trustee's objection did not allege that dismissal would cause any legal prejudice to creditors by depriving them of the ability to set aside the debtor's allegedly fraudulent transfers. *See In re Kimble,* 96 B.R. 305, 308 (Bankr.D.Mont.1988) (legal prejudice could be established by showing that dismissal would allow debtor to defeat potential recovery for creditors) (citing *In re Hall,* 15 B.R. at 917).

■■■ The debtor's former spouse opposed the motion to dismiss on grounds that he did not want to return to state court because the debtor had already violated a state court contempt order.[91] A creditor's desire to have its dispute with the debtor decided in federal as opposed to state court is insufficient to establish legal prejudice. *See Templeton v. Nedlloyd Lines,* 901 F.2d 1273, 1276 (5th Cir.1990) (fact that a party faces the prospect of trial in state court is insufficient to demonstrate legal prejudice); *In re Capistrano Associates,* 66 B.R. 421, 422 (Bankr.S.D.Fla.1986) (creditor's desire to have its dispute with debtor decided by a speedy bankruptcy court as opposed to a state court is not a sufficient basis to prevent dismissal pursuant to § 305). In short, neither the Bankruptcy Court nor the trustee cited any legal or factual basis supported by evidence in the record for the finding that Barry's motion to dismiss falsely asserted that dismissal would not cause the creditors to suffer legal prejudice.

**(C) Conclusions on Motion to Dismiss**

The Fifth Circuit has "long held that a ... court, in applying sanctions, may have to make a detailed explanation for its legal reasons," *F.D.I.C. v. Calhoun,* 34 F.3d 1291, 1297 (5th Cir.1994), and that the "failure to lay out the grounds for ... serious sanctions may itself be reversible error." *Id.* (assessment of attorney's fees under Rule 11 constitute "serious sanctions"). The Fifth Circuit explained that

[t]he purpose of creating such a record is simple: In order to guard against the application of hindsight by ... courts who have sat through long, complicated, and often contentious proceedings, we must not be put in the position of having to guess what unwarranted factual or legal errors were the basis of the sanctions. At [the] very least, such guidelines allow a fair and full appellate review of the decision.

*Id.* The Bankruptcy Court's failure to discuss the legal basis on which Barry's motion to dismiss was founded or to explain why—under the facts of this case—that legal basis was insufficiently researched or factually unsupported, led the Bankruptcy Court to clearly err by finding that the motion to dismiss contained blatantly false factual and legal contentions. For the reasons explained above the court concludes that the Bankruptcy Court's finding that the motion contained blatantly false factual and legal contentions must be vacated as clearly erroneous because it is based on findings of fact that are not plausible in

90. Although the trustee ultimately prevailed against the debtor on this issue, the default judgment that he obtained resulted from the debtor's failure to defend herself in a timely manner. Arguments that the debtor presented in her attempt to set aside the default judgment suggest that she may have had colorable defenses to the fraudulent transfer allegations.

91. See Transcript of Hearing held on September 4, 2001, Docket Entry No. 21 in Bankruptcy Case No. 01–34884–H4–7 and Item 8 in Appellant's Record, p. 7.

light of the entire record and on an erroneous view of the law that failed to consider any of law governing voluntary motions to dismiss.

### (2) Barry's Attendance at Creditors' Meeting

 When the initial creditors' meeting was adjourned, Hawks and the debtor both agreed to attend a continuation of the meeting scheduled initially for June 20, 2001, and ultimately for August 29, 2001. The Bankruptcy Court found that Barry engaged in bad-faith conduct when he "himself did not attend the continued Meeting of Creditors on June 20, 2001." *In re Cochener,* 360 B.R. at 579. Although Barry did not attend the creditors' meeting ultimately scheduled for August 29, 2001, the Bankruptcy Court inexplicably failed to make the same finding about Barry's failure to attend the meeting scheduled for that date. The Bankruptcy Court based its finding that Barry acted in bad faith by failing to attend the continued creditors' meeting on June 20, 2001, on its findings that Barry became the attorney in charge of the debtor's representation on or before June 18, 2001, when he filed the motion to dismiss, *see id.* at 552, and that Barry's acceptance of a $2,500 fee from the debtor obligated him to represent the debtor at creditors' meetings, including the June 20, 2001, meeting. *See id.* at 556, 579–580. However, these findings of the Bankruptcy Court are clearly erroneous because uncontroverted evidence establishes that on June 20, 2001, Hawks remained not only the debtor's attorney of record, but also, the attorney in charge of the debtor's representation and the only

attorney to have received a fee for representing the debtor in her bankruptcy case.

### (A) Attorney in Charge

Despite acknowledging that "it was not until July 24, 2001, that Barry, on behalf of the Debtor, filed a Motion to Substitute Attorney of Record, seeking to substitute himself for Hawks as the attorney of record [Docket Entry No. 12]," *In re Cochener,* 360 B.R. at 552, the Bankruptcy Court found that "Barry took over representation of the Debtor no later than June 18, 2001." *Id.* This finding was based on the fact that Barry drafted and filed the motion to dismiss. *See id.* at 551–52 and n. 7 ("The Court makes this finding despite Barry's testimony at the Sanctions Hearing that he filed the Motion to Dismiss 'before I actually took over the representation.' [Docket No. 135, p. 11:3–4.] For Barry to state that he filed the Motion to Dismiss before actually taking over the representation is nothing short of disingenuous, particularly given the very credible testimony of Hawks, who stated that by June 18, 2001, he had 'passed the football' to Barry.").

Neither the Bankruptcy Court nor the trustee has cited any evidence showing that Barry ever agreed to represent the debtor at the June 20 creditors' meeting or knew that the debtor and/or Hawks expected him to do so. Moreover, uncontroverted evidence shows that Barry sent the motion to dismiss to Hawks for his review prior to filing, that Barry signed Hawks' name as "Attorney for Debtor" on the motion "with permission," and that Barry signed his own name as "Associate Counsel for Debtor." *See id.* at 551.[92] Uncon-

---

**92.** See Debtor's Motion to Dismiss, Docket Entry No. 7 in Bankruptcy Case No. 01–34884–H4–7 and Item 1 of Appellant's Record. See also Testimony of Jason Hawks, Transcript of Sanctions Hearing held Septem-

ber 27, 2006, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 18 in Appellant's Record, p. 85 (stating: Q On page 2. That is not your signature, is it?

troverted evidence also shows that on June 18, 2001, after the motion had been filed, Hawks wrote a letter to the debtor reminding her of her responsibility not only to attend the continued creditors' meeting on June 20, 2001, but also to produce documents requested by the trustee.[93] The letter informed the debtor of the date, time, and place at which the meeting would be held and implored her to "bring those documents and records requested by Mr. Sommers at the initial meeting[,]" and to "[b]ring an extra copy of all the documents to present to Ms. Stuart, your ex-husband's attorney." [94] A notation at the bottom of the letter indicates that a copy was sent to Sommers. Although the letter admonished the debtor to contact Barry about the meeting, there is no indication that a copy of the letter was sent to Barry. On June 20, 2001, Hawks had not filed a motion to withdraw, and Barry had not filed a motion to substitute.[95] Finally, Hawks testified that although he had intended to "pass the football" to Barry before the June 20, 2001, meeting occurred

he knew that on that date he was still the debtor's attorney of record.[96]

In light of the complete absence of any evidence that Barry either committed to attend the June 20 meeting or knew that Hawks and/or the debtor expected him to attend the June 20 meeting, and the uncontroverted evidence that (1) Barry sent the motion to dismiss to Hawks prior to filing it and received Hawks' permission to sign Hawks' name on the motion as the "Attorney for Debtor," (2) on June 20 Hawks had not filed a motion to withdraw and Barry had not filed a motion to substitute, (3) Hawks continued to advise the debtor about her responsibility to attend the continued creditors' meeting, and (4) Hawks knew he was still the debtor's attorney of record, the Bankruptcy Court's finding that Barry—as opposed to Hawks—was the attorney in charge of representing the debtor on June 20, 2001, is not plausible in light of the entire record.

### (B) Fee Acceptance

The Bankruptcy Court's finding that Barry accepted a $2,500 fee from the debt-

---

A No, ma'am, that is my signature with permission.
Q Okay. So would Mr. Barry call you and say "I'm filing this motion to dismiss. You're still attorney of record, so I need you to be on the pleading. Can I sign your name"?
A Correct.
Q And you agreed to that?
A Yes, ma'am.).

93. See Testimony of Mynde Eisen, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 135 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 17 in Appellant's Record, pp. 118–19 (testifying that the time stamp on the motion to dismiss indicating when it was filed with the clerk's office and the time stamp on the letter indicating when it was faxed to Sommers shows that the motion was filed before the letter was sent to Sommers, and explaining that sanctions were not sought against Hawks because he sent this letter to the debtor).

94. Exhibit A attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 in Appellant's Record.

95. See Motion To Substitute Attorney of Record, Docket Entry No. 12 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 8 in Appellee's Record. Clerk's stamp and entry on Clerk's docket list show that this motion was filed on July 24, 2001.

96. See Testimony of Jason Hawks, Transcript of Sanctions Hearing held September 27, 2006, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 18 in Appellant's Record, p. 84 ("I thought I had passed the football, but I guess I was technically still attorney of record.").

or that obligated him to represent her at the June 20, 2001, continued creditors' meeting is negated by uncontroverted evidence that the debtor did not pay Barry the $2,500 fee until July of 2001,[97] and that only then did Barry file a motion to substitute for Hawks as her attorney of record.[98] Since the debtor did not pay Barry a fee until July of 2001, the Bankruptcy Court's finding that his acceptance of that fee obligated him to represent her at a creditor's meeting scheduled for an earlier date is not plausible in light of the entire record.

### (C) Conclusions

Because the Bankruptcy Court's findings that Barry became the attorney in charge of the debtor's representation on or before June 18, 2001, and that Barry's acceptance of a $2,500 fee from the debtor in July of 2001 obligated him to represent her at the continued creditors' meeting scheduled for June 20, 2001, are not plausible in light of the entire record, the Bankruptcy Court's finding that Barry acted in bad faith by failing to attend that meeting must be set aside as clearly erroneous.

### (3) Debtor's Attendance at Creditors' Meetings

The Bankruptcy Court found that Barry engaged in bad-faith conduct when he "concocted a reason for the Debtor not to attend the continued Meeting of Creditors, and then instructed her not to attend this meeting." *In re Cochener,* 360 B.R. at 575. Since for the reasons explained above in § IV.C.2(c)(1) the court has already concluded that the Bankruptcy Court could not plausibly have found that Barry filed the motion to dismiss in bad faith but, instead, in an effort to dismiss a case that both he and the trustee's attorney believed should not have been filed, the Bankruptcy Court could not plausibly have found that the motion to dismiss was merely concocted as a reason for the debtor not to attend the continued meeting of creditors.

There is no direct evidence in the record that Barry instructed the debtor not to attend the continued creditors' meeting. The Bankruptcy Court inferred this finding of fact from the debtor's testimony that she followed the advice of her attorneys, and from evidence that Barry drafted and filed the motion to dismiss, and in a June 18, 2001, letter [99] notified the trustee that the debtor would not attend the continued creditors' meeting scheduled for June 20, 2001, and in an August 14, 2001, letter [100] notified the trustee that neither

**97.** See Testimony of David Barry on August 31, 2006, Transcript of Sanctions Hearing, Docket Entry No. 137 in Bankruptcy Case No. 01–34884–H4–7 and "Barry Testimony Only" included in Item No. 17 of Appellant's Record, p. 10. See also Testimony of David Barry on September 27, 2006, Transcript of Sanctions Hearing, Docket Entry No. 131 in Bankruptcy Case No. 01–34884–H4–7 and included in Item No. 18 of Appellant's Record, p. 20 describing his July 12, 2001, letter to Hawks asking if Hawks wanted him to continue as co-counsel or to substitute in as attorney of record; and Disclosure of Compensation Under 11 U.S.C. Sec. 329 and B.R. 2016(B), Docket Entry No. 25 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 59 of Appellee's Record (disclosing Barry's receipt of $2,500 fee from debtor signed by Barry on October 15, 2001).

**98.** See Motion To Substitute Attorney of Record, Docket Entry No. 12 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 8 in Appellee's Record. Clerk's stamp and entry on Clerk's docket list show that this motion was filed on July 24, 2001.

**99.** See Exhibit B attached to Trustee's Motion for Sanctions, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 12 of Appellant's Record.

**100.** See Exhibit C attached to Trustee's Motion for Sanctions, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 12 of Appellant's Record.

he nor the debtor would appear at the rescheduled meeting on August 29, 2001. *Id.* Although Barry's June 18 letter offered no explanation why the debtor would not attend the June 20 creditors' meeting, his August 14 letter explained

> [a]s you know, there is a hearing scheduled on September 4, 2001, at which time Judge Greendyke shall hear the pending Motion to Dismiss.
>
> In the unlikely event the case is not dismissed on September 4, 2001, if you wish to re-convene the § 341 meeting after that date, I will be glad to prepare, serve, and file the appropriate notice.[101]

Based largely on the contents of this letter the Bankruptcy Court inferred that Barry "took the position that until Judge Greendyke ruled on the Motion to Dismiss, the Trustee could not further examine the Debtor or require her to produce the documents that Hawks and she had already agreed to produce. [Findings of Fact Nos. 38, 40.]" *Id.* Stating that Barry's position had "absolutely no basis in law," *id.*, the Bankruptcy Court characterized it as "nothing more than a disingenuous attempt to shield the Debtor from further examination by the Trustee in the hope that Judge Greendyke would dismiss the case and thereby deprive the Trustee of the ability to go forward with his investigation." *Id.*

Section 521(a)(3) of the Bankruptcy Code establishes an affirmative duty on Chapter 7 debtors to cooperate with the case trustee in the administration of the bankruptcy estate. *See* 11 U.S.C. § 521(a)(3).[102] The debtor's duty to cooperate with the trustee includes the duty to

"appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title." 11 U.S.C. § 343. Although on June 6, 2001, the debtor, together with her attorney, Hawks, appeared at the initial meeting of creditors, that meeting was adjourned and continued so that documents requested by the trustee could be produced. *See* B.R. Rule 2003(e) (providing that "[t]he meeting may be adjourned from time to time by announcement at the meeting of the adjourned date and time without further written notice"). Undisputed evidence shows that both the debtor and Hawks agreed to appear and to produce documents requested by the trustee at the continued meeting of creditors scheduled for June 20, 2001, but that neither of them appeared or produced the requested documents. *See In re Cochener*, 360 B.R. at 550–553. The debtor's failure to appear or to produce documents at the continued creditors' meeting violated her duty to cooperate with the trustee and hindered and delayed the trustee's effective administration of this case. *See also In re Cherry*, 341 B.R. 581 (Bankr.S.D.Tex.2006) (discussing adjournment and recommencement of the creditors' meeting).

Barry has not cited and the court has not found any legal support for the debtor's failure to attend the continued creditors' meetings. Instead, Barry merely asserts that "[t]he Trustee filed no Motion to Compel, and Barry indicated that he would instruct the Debtor to cooperate if the case were not dismissed and the Court ordered the Debtor to appear."[103] Barry's assertion that he would instruct the debtor to cooperate only if the case was not dis-

---

**101.** *Id.*

**102.** The statute provides that "(a) The debtor shall—... (3) if a trustee is serving in the case ... cooperate with the trustee as necessary to enable the trustee to perform the trustee's

duties under this title." 11 U.S.C. § 523(a)(3).

**103.** Appellant's Brief, Docket Entry No. 8, p. 14 ¶ 67.

missed confirms the Bankruptcy Court's finding that Barry—in contravention to the duties that the Bankruptcy Code imposes on debtors—instructed the debtor not to appear and not to produce documents at the continued creditors' meeting scheduled for August 29, 2001.

Although for the reasons explained in § IV.C.2(c)(2), above, the court has already concluded that Barry was neither the attorney in charge of the debtor's representation on June 20, 2001, nor the attorney obligated to represent her at the continued creditors' meeting scheduled for that date, his signature on the motion to dismiss as "Associate Counsel for Debtor" filed on June 18, 2001, together with his June 18, 2001, letter to the trustee, show that he was materially involved in the case by that date. Viewed in the light of Barry's August 14, 2001, letter to the trustee explaining the reasons why neither he nor the debtor would appear at the continued creditors' meeting scheduled for August 29, 2001, the Bankruptcy Court could plausibly have inferred from Barry's material involvement in the case by June 18, 2001, that Barry was responsible for the debtor's failure to attend or produce documents at the June 20 continued creditors' meeting.

Accordingly, for largely the same reasons explained by the Bankruptcy Court, this court concludes that the Bankruptcy Court's finding that Barry acted in bad faith by instructing the debtor not to attend and not to produce documents at the continued creditors' meetings scheduled for June 20 and August 29, 2001, is plausible in light of the entire record.

#### (4) Misstatement of the Law

The Bankruptcy Court found that Barry engaged in bad-faith conduct when he "drafted a letter to the Trustee, dated October 17, 2001, intentionally misstating the law regarding the allowable reach-back period for fraudulent transfers under the Bankruptcy Code in an attempt to mislead, deceive, and harass the Trustee." *In re Cochener*, 360 B.R. at 583. Barry's October 17 letter was written in response to the trustee's notice of a 2004 Examination of the debtor and to protest the trustee's request for documents. The contested portion of the letter states

> [a]s I understand the Trustee's position with regard to the Debtor's desire to voluntarily dismiss this case, he believes the Debtor has concealed assets. The Bankruptcy Code permits the Trustee to look back for up to one year with an eye toward fraudulent transfers or preferences to insiders. As you know, the Debtor was divorced in November 2000 and that court divided whatever property the Debtor may have owned prior to her divorce. Given the time limits permitted in the Bankruptcy Code and since the divorce decree will show transfers of property owned by the Debtor and her former spouse on the date of its entry, it would seem that only transfers made later are relevant here.

> If you would amend your subpoena, there would be no need for me to seek to quash the requests.[104]

Citing Tex. Bus. & Comm.Code Ann. § 24.005 (titled: Transfers Fraudulent as to Present and Future Creditors), the Bankruptcy-Court asserted that

> Barry knew or should have known, that 11 U.S.C. § 544(b)(1) allows the Trustee to use the applicable Texas state law to look back *four years* to file fraudulent conveyance actions against a debtor, not the one year that Barry claimed in the letter. This is black letter law.

**104.** Exhibit E attached to Trustee's Motion for Sanctions, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 12 of Appellant's Record.

. . .

Barry's letter, based on a legal falsehood, is yet another example of his obstructionist tactics and attempts to prevent the Trustee from carrying out his duties. The message of Barry's letter was that the Trustee would have to amend the subpoena to avoid dealing with Barry filing a motion to quash. The clear intent on Barry's part was first, to further delay the production of any documents to the Trustee; and, second, to prevent any production of documents pertaining to transactions occurring more than one year prior to the filing of the Debtor's petition. The Court finds that these tactics constitute bad faith conduct on the part of Barry. *In re Cochener*, 360 B.R. at 583–84.

Barry argues that his letter of October 17, 2001, was not based on a legal falsehood but, instead, on the "correct position that, absent a **showing** of a fraudulent transfer, the proper look back period was one year." [105] Barry also argues that his assertion of this position on October 17, 2001, is not evidence of bad faith because "there was no indication that the Trustee communicated articulable suspicions of fraud prior to Barry's letter." [106] Barry's argument is contradicted by the transcript of the September 4, 2001, hearing on the motion to dismiss before Judge Greendyke. At that hearing the trustee's counsel opposed the motion on grounds that the debtor had transferred approximately $50,000 to her grandson sometime prior to filing her petition, and that the trustee had reason to believe that fraudulent transfer

actions could recover additional assets for the estate.[107] As an example of such a transfer, the trustee's counsel stated "[w]e have a son who is a very young age that has bought two very large houses, that works basically as a manager for a car wash. And she's [i.e., the debtor] been feeding him cash." [108] On behalf of the debtor Mr. Joffe argued that the transfers mentioned by the trustee's counsel could all be time barred because they occurred more than a year before the debtor filed her petition. The trustee's counsel responded that the four-year statute would apply. Asserting that he would not "try the case on statements," [109] Judge Greendyke continued the hearing to let the parties conduct discovery opining that "discovery ou[gh]t to be liberal." [110]

The suspicions of fraudulent transfer articulated by the trustee's counsel at the September 4, 2001, hearing, and her assertion that those suspicions entitled the trustee to assert the four-year look-back period provided by state law, coupled with Judge Greendyke's opinion that the discovery should be "liberal," demonstrate not only that the trustee had articulated suspicions of fraud prior to October 17, 2001, but also that both parties had stated their respective arguments regarding the appropriate look-back period in this case in open court on September 4, 2001, and that the Bankruptcy Court had responded by directing them to engage in liberal discovery. However, since Barry took the position at that hearing that the one-year as opposed to the four-year look-back period should be applied in this case, the Bank-

---

**105.** Appellant's Reply Brief, Docket Entry No. 21, p. 15.

**106.** *Id.*

**107.** Docket Entry No. 174 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 8 in Appellant's Record, p. 4.

**108.** *Id.* at 4–5.

**109.** *Id.* at 5.

**110.** *Id.* at 10.

ruptcy Court could not plausibly have found that Barry's assertion of that same position in his October 17, 2001, letter to the trustee was a legal falsehood made in a bad-faith attempt to mislead or deceive the trustee. *In re Cochener,* 360 B.R. at 584. Instead, Barry's statement in his October 17, 2001, letter to the trustee that the one-year instead of the four-year look-back applied in this case was merely a restatement of the argument that he had previously made in open court. Moreover, even if the Bankruptcy Court could plausibly have found that Barry made this statement in an attempt to harass the trustee, for the reasons explained below the court could not plausibly have found that attempt was made in bad faith.

On October 22, 2001, the trustee's attorney sent a letter to Barry disagreeing with his contention regarding the applicability of the one-year look-back period.[111] The trustee's attorney explained that she was "not only concerned about transfers that, the Debtor made to her ex-husband, but also transfers she may have made to any insider, including her children. Her divorce in 2000 does not necessarily shield her from transfers made prior to her divorce during the four year period."[112] This explanation from the trustee's attorney implicitly acknowledges that the one-year look-back period might apply to this case if the only transfers of assets at issue were transfers to the debtor's former spouse, but that since the trustee was also concerned about transfers to other insiders that preceded the debtor's divorce, the

trustee was entitled to rely on the four-year statute.

At the sanctions hearing Barry provided uncontradicted testimony that following this exchange of letters he and the trustee's attorney negotiated an agreement that was completed by October 30, 2001, regarding the specific documents that the debtor was to have produced at the 2004 Examination.[113] Although the debtor neither appeared nor produced documents at that examination, Barry appeared and stated that he had lost contact with the debtor. *See In re Cochener,* 360 B.R. at 556 ¶¶ 47–49. Since following the October 22, 2001, letter from the trustee's attorney explaining why she disagreed with his contention that the one-year look-back period should apply in this case, Barry abandoned that argument and within eight days negotiated an agreement regarding the specific documents that the debtor was to have produced, the Bankruptcy Court could not plausibly have found that Barry made the statement regarding the one-year look-back period in his October 17, 2001, letter in a bad-faith attempt to harass the trustee.

The bottom line on this issue is that Barry argued a position that he thought was plausible under the law (i.e., applicability of the one-year look-back period), and when presented with a cogent explanation of why his position might not be meritorious, Barry abandoned his position and negotiated a settlement of the dispute based on that position. This is not sanctionable conduct.

**111.** Exhibit F attached to Trustee's Motion for Sanctions, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 12 of Appellant's Record.

**112.** *Id.*

**113.** See Testimony of David Barry, Transcript of Sanctions Hearing held August 31, 2006,

Docket Entry No. 137 in Bankruptcy Case No. 01–34884–H4–7 and Item No. 17 in Appellant's Record, pp. 25, 27, and 36 (testifying that by October 30, 2001, he and the trustee's attorney had negotiated an agreement regarding the documents that the debtor should produce at the 2004 examination).

### (5) Debtor's Failure to Produce Documents

The Bankruptcy Court found that Barry engaged in bad-faith conduct when he "instructed the Debtor not to produce documents requested by the Trustee which prior counsel to the Debtor had already agreed to turn over." *In re Cochener,* 360 B.R. at 584. There is no direct evidence in the record that Barry instructed the debtor not to produce the documents requested by the trustee. The Bankruptcy Court inferred that Barry instructed the debtor not to produce these documents from its findings that "Barry advised the Debtor ... not [to] attend the continued Meeting of Creditors because the Motion to Dismiss had yet to be ruled on. [Finding of Fact Nos. 30, 40.] Relying on this evidence the Debtor did not turn over the documents." *Id.* at 585.

Based on the August 14, 2001, letter to the trustee in which Barry stated, "[i]n the unlikely event that the case is not dismissed on September 4, 2001, if you wish to re-convene the § 341 meeting after that date, I will be glad to prepare, serve, and file the appropriate notice," [114] the Bankruptcy Court could plausibly have inferred that Barry instructed the debtor not to produce documents requested by the trustee at the continued creditors' meetings, but could not plausibly have inferred that Barry continued to instruct the debtor not to produce the documents following the September 4, 2001, hearing at which Judge Greendyke directed the parties to engage in liberal discovery. Indeed, the Bankruptcy Court's finding on this issue is limited to the debtor's failure to produce documents at the continued creditors' meetings—both of which were scheduled for dates prior to the September 4, 2001,

hearing. *Id.* For these reasons the court has already concluded that the Bankruptcy Court could plausibly have found that Barry instructed the debtor not to attend the continued creditors' meetings. *See* § IV.C.(2)(c)(2), above. For these same reasons the court now concludes that the Bankruptcy Court could plausibly have found that Barry instructed the debtor not to produce the documents requested by the trustee at the continued creditors' meetings. However, there is no evidence in the record from which the Bankruptcy Court could plausibly have inferred that after Judge Greendyke's September 4, 2001, decision not to rule on the motion to dismiss until the parties had engaged in discovery, Barry instructed the debtor not to produce the documents or was otherwise responsible for the debtor's continued failure to produce them.

At the sanctions hearing Barry provided uncontradicted testimony that (1) by October 30, 2001, he had reached an agreement with the trustee's attorney regarding the specific documents that the debtor was to have produced, and (2) he could not have produced the documents himself because he never had them. Neither the trustee nor the trustee's attorney testified that they had any reason to believe that Barry possessed the documents but failed to produce them. Absent contradictory evidence from which the court could infer that Barry possessed the documents or had access to them, the Bankruptcy Court could not plausibly have imputed the debtor's failure to produce the documents to Barry even if it rejected his testimony as not credible.

### (6) Conclusions as to Bad–Faith Conduct

For the reasons explained above the court concludes that in light of the entire

---

114. Exhibit C attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78 in Bankruptcy Case No. 01–34884–H4–7 and Item 12 in Appellant's Record.

record the Bankruptcy Court could plausibly have found that Barry acted in bad faith by instructing the debtor not to attend and not to produce documents requested by the trustee at the continued creditors' meetings scheduled for June 20 and August 29, 2001; but could not plausibly have found that Barry acted in bad faith by (1) filing the motion to dismiss, (2) failing to attend the continued creditors' meeting on June 20, 2001, (3) misstating the law in his October 17, 2001, letter to the trustee in an attempt to mislead, deceive, or harass the trustee, or (4) instructing the debtor not to produce documents requested by the trustee after the September 4, 2001, hearing on the motion to dismiss at which Judge Greendyke directed the parties to engage in liberal discovery. Accordingly, the court concludes that the Bankruptcy Court did not clearly err by finding that Barry acted in bad faith by instructing the debtor not to attend and not to produce documents at the continued creditors' meetings, but did clearly err by making all its other findings that Barry acted in bad faith. *See Hazeur*, 983 F.2d 1061, 1993 WL 14973 at *7 (finding of fact will not be set aside as clearly erroneous "[i]f the . . . court's account of the evidence is plausible in light of the record viewed in its entirety").

### (d) Sanctions

#### (1) **Applicable Law**

Although this court reviews the Bankruptcy Court's finding of bad faith under the clearly erroneous standard, it applies an abuse-of-discretion standard to the Bankruptcy Court's ultimate decision to impose sanctions. *See Hazeur*, 983 F.2d 1061, 1993 WL 14973 at *8 (citing *Wallace*, 964 F.2d at 1217, and *Chambers*, 111 S.Ct. at 2136). The Fifth Circuit has explained that

[t]he differences between the two standards, however, appears negligible. In reviewing the [bankruptcy] court's decision to impose sanctions for bad faith conduct under the abuse of discretion standard, [the court] will not set that decision aside unless [it] "[has] a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors."

*Id.* (quoting *United States v. Walker*, 772 F.2d 1172, 1176 n. 9 (5th Cir.1985)).

#### (2) **Sanctionable Acts**

The Fifth Circuit has held that a court's inherent power to sanction "must be exercised with restraint and discretion," *Crowe I*, 151 F.3d at 226, and must be accompanied by "a specific finding that the . . . [sanctioned party] acted in 'bad faith.'" *Id.* at 236 (citing *Chaves*, 47 F.3d at 156). *See also Crowe II*, 261 F.3d at 563. Therefore, the court's conclusion that the Bankruptcy Court clearly erred in finding that Barry acted in bad faith by (1) filing the motion to dismiss, (2) failing to attend the continued creditors' meeting on June 20, 2001, (3) misstating the law in his October 17, 2001, letter to the trustee in an attempt to mislead, deceive, or harass the trustee, and (4) instructing the debtor not to produce documents requested by the trustee after the September 4, 2001, hearing on the motion to dismiss at which Judge Greendyke directed the parties to engage in liberal discovery, *see* § IV.C.(2)(c), above, mandates the conclusion that the Bankruptcy Court abused its discretion by imposing sanctions on Barry for these acts pursuant to 11 U.S.C. § 105 and its inherent powers. However, the court's conclusion that the Bankruptcy Court did not clearly err by finding that Barry acted in bad faith by instructing the debtor not to attend and not to produce documents at the continued creditors'

meetings, supports the Bankruptcy Court's conclusion that Barry deserved to be sanctioned for this conduct.

■ Barry argues that the Bankruptcy Court abused its discretion in basing its decision to sanction him for instructing the debtor not to attend and not to produce documents at the continued creditors' meeting entirely on the debtor's testimony that she relied on his instruction without articulating any reason for finding that testimony credible.[115] But the Bankruptcy Court's finding that Barry instructed the debtor not to attend or produce documents requested by the trustee at the continued creditors' meetings was not based entirely—or even primarily—on the debtor's testimony but, instead, on Barry's June 18, 2001, letter to the trustee stating that the debtor would not attend the creditors' meeting scheduled for June 20, 2001, and his August 14, 2001, letter to the trustee stating that neither he nor the debtor would appear at the continued creditors' meeting scheduled for August 29, 2001, and stating that "[i]n the unlikely event the case is not dismissed on September 4, 2001, if you wish to reconvene the § 341 meeting after that date, I will be glad to prepare, serve, and file the appropriate notice."[116] The contents of the August 14, 2001, letter, alone, allowed the Bankruptcy Court plausibly to infer that Barry instructed the debtor not to attend the creditors' meeting scheduled for August 29, 2001, and for the reasons explained in § IV.C.2(c)(3) the court has also concluded that the Bankruptcy Court could plausibly have inferred that Barry was materially responsible for the debtor's failure to attend or produce documents at the June 20 creditors' meeting. The court therefore concludes that the Bankruptcy Court acted well within its discretion by sanctioning Barry for this conduct.

### (3) Sanctions Imposed

The Bankruptcy Court sanctioned Barry in the aggregate amount of $25,121.89, representing the sum of: (1) the $2,500.00 retainer which Barry took from the Debtor; (2) the reasonable and necessary attorney fees of $6,901.25 for the Trustee's efforts in defeating the Motion to Dismiss; (3) the reasonable and necessary costs of $704.47 incurred in defeating the Motion to Dismiss; (4) the reasonable and necessary attorney fees of $13,951.25 for the prosecution of the Motion for Sanctions; and (5) the reasonable and necessary costs of $1,064.92 incurred in prosecuting the Motion for Sanctions.

*In re Cochener*, 360 B.R. at 596. Barry argues that the Bankruptcy Court abused its discretion by awarding attorney's fees to the trustee that were excessive and punitive, but does not contest the order to disgorge the $2,500 retainer paid by the debtor.[117]

■ Inherent powers may be exercised only if essential to preserve the authority of the court, and the sanction imposed must employ the least possible power adequate to the purpose to be achieved. *See Natural Gas Pipeline Company of America v. Energy Gathering Inc.*, 86 F.3d 464, 467 (5th Cir.1996).

---

115. Appellant's Brief, Docket Entry No. 8, pp. 20–22; Appellant's Reply Brief, Docket Entry No. 21, pp. 15 and 16–17.

116. Exhibit C attached to Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 78, in Bankruptcy Case No. 01–34884–H4–7 and Item 12 of Appellant's Record.

117. Appellant's Brief, Docket Entry No. 8, p. 22; Appellant's Reply Brief, Docket Entry No. 21, pp. 15–16.

Sanctions imposed in any particular case must be "tailored to fit the particular wrong." *Topalian v. Ehrman*, 3 F.3d 931, 936 (5th Cir.1993) (extending the analytical principles for determining sanctions under Rule 11 "across-the-board" to all of the court's sanction powers). Moreover, in assessing sanctions against Barry the Bankruptcy Court had to be mindful of the caveat stated by the Fifth Circuit in *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986), that 11 U.S.C. § 105 "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." Appropriate factors for the Bankruptcy Court to have considered in determining the sanction to impose include: (1) the precise conduct being punished, (2) the precise expenses caused by the violation, (3) the reasonableness of the fees imposed, and (4) the least severe sanction adequate to achieve the purpose of the rule relied upon to impose the sanction. *See Topalian*, 3 F.3d at 936–37.

### (A) Disgorgement of Retainer

■ This court has concluded that the only finding of bad-faith conduct for which the Bankruptcy Court could have sanctioned Barry without abusing its discretion is the finding that Barry acted in bad faith by instructing the debtor not to attend or produce documents at the continued creditors' meeting. This finding requires that the sanctions imposed be tailored to ensure that Barry fulfills his obligation to advise his clients of their duties under the Bankruptcy Code, including the duty to cooperate with the trustee's efforts to administer estate assets. *See In re Paige*, 365 B.R. 632, 640 (Bankr.N.D.Tex.2007) (sanctioning attorney under 11 U.S.C. § 5 and the court's inherent power "as a means to ensure that ... [the sanctioned party] satisfies his obligations and duties

under the Bankruptcy Code, specifically his obligation to cooperate with the trustee's efforts to administer estate assets"). The Bankruptcy Court's order "that Barry pay to the Chapter 7 Estate the $2,500.00 retainer that the Debtor gave to him," *In re Cochener*, 360 B.R. at 593, is appropriate in this case because by instructing the debtor not to attend or produce documents at the continued creditors' meeting, Barry instructed the debtor to violate duties that the Bankruptcy Code expressly imposed upon her. Attorneys who instruct their clients to violate duties imposed by the Bankruptcy Code have not provided effective assistance of counsel and have not earned a fee.

### (B) Trustee's Attorney's Fees

■ The Bankruptcy Court also ordered that Barry

> pay to the Trustee a portion of the fees and expenses for which the Trustee-or, more precisely, the Chapter 7 estate-is liable to Eisen for services rendered relating to the Trustee's opposition to the Motion to Dismiss and the Trustee's prosecution of the Motion for Sanctions.

*In re Cochener*, 360 B.R. at 593. These sanctions were based on the following findings of fact:

> 127. The Trustee incurred reasonable attorney's fees and costs of $7,613.75 and $704.47, respectively, in dealing with: (1) the Debtor's Motion to Dismiss; (2) the Debtor's and Barry's refusal to appear at the continued Meetings of Creditors; and (3) obtaining documents that the Trustee requested so that he could carry out his duties as Trustee. [Trustee's Exhibit No. 25.]

> 128. Additionally, the Trustee incurred reasonable attorneys fees and costs of $15,587.50 and $1,064.92, respectively, in

prosecuting the Motion for Sanctions. [Trustee's Exhibits Nos. 26, 26A.]

*Id.* at 568. The standards for scrutinizing the amount of a sanctions award are the same regardless of the statutory basis upon which the award is imposed. *See Topalian*, 3 F.3d at 936 & n. 5 ("[A]lthough conduct that violates one rule may not warrant the same type or amount of sanction as conduct that violates another rule, we think the underlying principles elucidated in *Thomas[*, 836 F.2d at 876–77] in the context of Rule 11 apply across-the-board to all of the … court's sanction powers."). The trustee can recover attorney's fees and costs attributable to investigating, researching, and fighting the debtor's meritless pleadings and the fees and associated costs incurred in researching, preparing, and prosecuting its sanctions motion. But a party seeking the sanction must provide the court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary. *Id.* at 937.

 (i) Motion to Dismiss, Debtor's and Barry's Refusal to Appear at the Continued Meetings of Creditors, and Obtaining Documents

The Bankruptcy Court sanctioned Barry $7,613.75 of fees and $704.47 of related costs for work performed by the trustee's attorney in dealing with (1) the Debtor's Motion to Dismiss, (2) the Debtor's and Barry's refusal to appear at the continued Meetings of Creditors, and (3) obtaining documents that the trustee requested so that he could carry out his duties as trustee. However, the Bankruptcy Court did not calculate the amounts of fees and costs attributable to each category of work. The Bankruptcy Court's failure to calculate the fees and costs separately may be attributed to the fee records submitted by the trustee in support of his motion for sanctions. All of the work recorded on the trustee's fee records is attributed to "dismissal," meaning the debtor's motion to dismiss.[118] Because the court has concluded that the Bankruptcy Court clearly erred by finding that Barry acted in bad faith by filing the motion to dismiss, the court concludes that the Bankruptcy Court abused its discretion by sanctioning Barry any amount of attorney's fees and/or related costs incurred by the trustee in dealing with the motion to dismiss. Because the fee records submitted by the trustee state that the $7,613.75 of attorney's fees and $704.47 of associated costs were all incurred dealing with the motion to dismiss, the Bankruptcy Court abused its discretion by sanctioning Barry in these amounts.

 (ii) Prosecuting the Motion for Sanctions

The Bankruptcy Court sanctioned Barry $13,951.25 in attorney's fees and $1,064.92 in related costs for work that the trustee's attorney performed prosecuting the trus-

---

118. See Attachment No. 2 to Index of Attachments to Memorandum Opinion on: (1) Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate; (2) David Barry's Motion to Dismiss the Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate; and (3) Regarding the Court's Show Cause Order of September 1, 2006, Against Beverly Cochener, Chad Cochener, and Jason Hawks, Docket Entry No. 146–2. See also Testimony of the Trustee's attorney, Mynde Eisen, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 130 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 in Appellant's Record, pp. 96–99 (stating that damages sought related to time required to handle the motion to dismiss and interactions with Barry).

tee's motion for sanctions. Although the Bankruptcy Court explained the manner in which it calculated these fees, it did not explain the reasons why it decided that sanctions in the form of these attorney's fees and related costs were warranted.

The trustee's attorney testified that once Barry was allowed to withdraw from this case in January of 2002, sanctions were not needed to deter him from engaging in similar conduct.[119] The trustee also testified that to his knowledge Barry had not engaged in the type of conduct for which sanctions have been sought in this case since the events underlying the motion for sanctions now at issue.[120] Before filing the motion for sanctions, the trustee's attorney sent a letter to Barry intended to evoke an offer to settle the trustee's claim that Barry had engaged in bad-faith conduct during his representation of the debtor in this case. In response to that letter, Barry offered to pay the $2,500 retainer that he had received from the debtor to the trustee. The trustee rejected Barry's offer, and filed his motion for sanctions.[121]

Because the court has concluded that the only sanctions justifiably ordered by the Bankruptcy Court is the order that Barry disgorge the $2,500 retainer that he received from the debtor, and because Barry offered to settle this dispute with the trustee for exactly this amount before the trustee filed his motion for sanctions, the court concludes that the Bankruptcy Court abused its discretion by sanctioning Barry an amount of attorney's fees and associated costs incurred by the trustee in prosecuting his motion for sanctions.

### 3. Conclusions as to Sanctions Under 11 U.S.C. § 105

For the reasons explained above the court concludes that the Bankruptcy Court did not abuse its discretion by sanctioning Barry in the amount of the $2,500 retainer that the debtor paid him to represent her, but that the Bankruptcy Court abused its discretion by sanctioning Barry for attorney's fees and associated costs incurred by the trustee in opposing the motion to dismiss and prosecuting the motion for sanctions.

### D. Imposition of Sanctions Under 28 U.S.C. § 1927

As an alternative to 11 U.S.C. § 105 and its inherent powers, the Bankruptcy Court based its decision to sanction Barry on 28 U.S.C. § 1927. *In re Cochener*, 360 B.R. at 585–87. The Bankruptcy Court explained its reasons for sanctioning Barry under § 1927 as follows:

First, this Court has already found that this conduct multiplied the proceedings. Barry filed the Motion to Dismiss, which caused the Trustee to have to file a response and spend time and money defeating this motion. Further, if Barry had complied with the Trustee's original request to produce documents and instructed the Debtor to attend the continued Meeting of Creditors back in 2001,

---

**119.** Testimony of Mynde Eisen, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 130 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 in Appellant's Record, pp. 102–103.

**120.** Testimony of Ronald Sommers, Transcript of Sanctions Hearing held August 31, 2006, Docket Entry No. 130 in Bankruptcy Case No. 01–34884–H4–7 and Item 17 in Appellant's Record, pp. 67–68.

**121.** See June 15, 2006 letter from Mynde Eisen to David Barry, Exhibit 1 attached to Motion to Dismiss Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate, Docket Entry No. 79 in Bankruptcy Case No. 01–34884–H4–7, and Item 13 in Appellant's Record.

the Trustee would not have had to spend the time and money tracking down the information about the status of the Real Properties. [Finding of Fact Nos. 30, 40, 60, 61.] It is conceivable that if Barry followed his duties and the Trustee had uncovered the complete factual picture back then, the substantial destruction of the Real Properties could have been prevented since that conduct did not occur until several years later. [*See* Finding of Fact Nos. 93–99.]

*Id.* at 586. Barry argues, *inter alia,* that the Bankruptcy Court abused its discretion by sanctioning him under § 1927 because "[f]ar from seeking to multiply proceedings ... [he] attempt[ed] to expedite dismissal of a case where a discharge was unlikely and whose underlying issues were best pursued in other forums." [122]

### 1. *Applicable Law*

 Section 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof [123] who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. Section 1927 allows federal courts to assess costs and attorney's fees against an attorney who has unreasonably multiplied the proceedings in a case. Under the plain language of the statute, three essential requirements must be satisfied with respect to an award of sanctions under § 1927:(1) the attorney must engage in "unreasonable and vexatious" conduct; (2) the "unreasonable and vexatious" conduct must be conduct that "multiplies the proceedings;" and (3) the dollar amount of the sanction must bear a financial nexus to the excess proceedings, i.e., the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. *See Stewart v. Courtyard Management Corp.,* 155 Fed.Appx. 756, 760, 2005 WL 3114914 at *4 (5th Cir.2005) (citing *Peterson v. BMI Refractories,* 124 F.3d 1386, 1396 (11th Cir.1997)). Proving that an attorney's behavior was both "vexatious" and "unreasonable" requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court." *Id.* (quoting *Edwards v. General Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998)). Section 1927 only authorizes shifting fees that are associated with the persistent prosecution of a meritless claim. *Id.* (quoting *Browning v. Kramer,* 931 F.2d 340, 345 (5th Cir.1991)). "Underlying the sanctions provided in 28 U.S.C. § 1927 is the recognition that frivolous ... arguments waste scarce judicial resources and increase legal fees charged to parties." *Baulch v. Johns,* 70 F.3d 813, 817 (5th Cir.1995). However, since § 1927 sanctions are penal in nature, and in order not to dampen the legitimate zeal of an attorney in representing his client, § 1927 is strictly construed. *See Travelers Insurance Co. v. St. Jude Hosp. of Kenner, La., Inc.,* 38 F.3d 1414, 1416 (5th Cir.1994). Orders imposing sanctions for under § 1927 are reviewed for abuse of discretion. *Id.*

### 2. *Application of the Law to the Facts*

The Bankruptcy Court justified its decision to sanction Barry under § 1927 on two bases: (1) Barry's filing of the motion

---

**122.** Appellant's Reply Brief, Docket Entry No. 21, p. 9.

**123.** For purposes of this Memorandum Opinion and Order the court has assumed without deciding that a bankruptcy court is a "court of the United States."

to dismiss, and (2) Barry's instructing the debtor not to attend or produce documents at the continued creditors' meetings.

### (a) Motion to Dismiss

■ The Bankruptcy Court abused its discretion by finding that Barry's motion to dismiss was vexatious just because the court found it to be meritless. Section 1927 requires a sanctioning court to do more than disagree with a party's legal analysis; the court must make a separate determination on both the issue of the reasonableness of the claims and the purpose for which they were instituted. *See Calhoun,* 34 F.3d at 1300–01. For the same reasons that this court has already concluded that the Bankruptcy Court could not plausibly have found that Barry filed the motion to dismiss in bad faith, the court concludes that the Bankruptcy Court could not plausibly have found that Barry filed the motion for an improper purpose. *See* § IV.B.2(c)(1)(B). Accordingly, the court concludes that the Bankruptcy Court abused its discretion by sanctioning Barry under § 1927 for having filed the motion to dismiss. *See Stewart,* 155 Fed.Appx. at 760, 2005 WL 3114914 at *4 (proving that sanctions are justifiably imposed under § 1927 requires "evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court").

### (b) Debtor's Failure to Attend Continued Creditors' Meetings or to Produce Documents

■ The Bankruptcy Court abused its discretion by sanctioning Barry under § 1927 for having instructed the debtor not to attend or to produce documents at the continued creditors' meetings because this conduct did not multiply the proceedings in the bankruptcy case and was not associated with Barry's prosecution of a meritless claim. *See Browning,* 931 F.2d

at 345 ("Under § 1927, only those fees and costs associated with 'the persistent prosecution of a meritless claim' may be awarded."). Moreover, for the reasons explained in § IV.C.2(d)(3)(B), above, the trustee's records of attorney's fees and costs do not allow identification of any fees and costs incurred by the trustee that can reasonably be attributed to Barry's having instructed the debtor not to attend or produce documents at the continued creditors' meeting.

### 3. *Conclusions as to Sanctions Under 28 U.S.C. § 1927*

Accordingly, the court concludes that the Bankruptcy Court abused its discretion by sanctioning Barry under § 1927 for having instructed the debtor not to attend or produce documents at the continued creditors' meeting. *See* 28 U.S.C. § 1927 (the dollar amount of the sanction may not exceed the "costs, expenses, and attorneys' fees reasonably incurred because of such conduct").

### V. *Conclusions and Order*

The Motion of Ronald L. Sommers, Trustee, for Leave to File Surreply Brief (Docket Entry No. 22) is **GRANTED.** Since the court has not considered any of the items that appellee seeks to have stricken, Appellee's Motion to Strike Certain of Appellant's Record and Issue Designation (Docket Entry No. 23) is **MOOT.**

For the reasons explained above the Bankruptcy Court's Order Granting the Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate by ordering Barry to pay to the Trustee $2,500 received from the debtor is **AFFIRMED,** and the Bankruptcy Court's Order Granting the Trustee's Motion for Sanctions Against David Barry for Causing Unnecessary Delay and Expense to the Estate by ordering Barry to pay attorney's fees and

costs in the amount of $22,621.89[124] is **REVERSED.**[125]

---

124. This amount was reached by subtracting the $2,500 retainer fee from the aggregate amount of sanctions imposed by the Bankruptcy Court—$25,121.89.

125. Both parties in this case have had numerous opportunities to submit written materials in support of their arguments. As the length of this Memorandum Opinion and Order indicates, the court has expended considerable time reading those materials and performing a significant amount of independent research to be as fully informed as possible when addressing their arguments. While, because of the sheer volume of information presented, it is not impossible that some arguments were overlooked, the failure to expressly address a particular argument in this Memorandum Opinion and Order reflects the court's judgment that the argument lacked sufficient merit to warrant discussion.